Robert SOKOLSKI, Plaintiff,

v.

TRANS UNION CORPORATION
and Bank One Columbus,
N.A., Defendants.

Robert Sokolski, Plaintiff.

v.

Trans Union Corporation and Bank
One Columbus, N.A.,
Defendants.

Nos. CV 96–3004, CV 96–4029.

United States District Court,
E.D. New York.

May 21, 1999.

Jeffrey G. Lerman, Mineola, New York, for plaintiff.

Marion, Satzberg, Trichon & Kogan, P.C. by Mark E. Kogan, Bruce S. Luck-

man, Philadelphia, PA, for defendant Trans Union Corporation.

Shaw, Licitra, Esernio & Schwartz, P.C. by Steven H. Blat, Garden City, NY, for defendant Bank One, Columbus, N.A.

Law Office of Jeffrey S. Saltz, P.C. by Jeffrey S. Saltz, Philadelphia, PA, for defendant Bank One, Columbus, N.A.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff commenced these consolidated cases pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA") and section 349 of The New York State General Business Law (Consumer Protection From Deceptive Acts and Practices). Named as defendants are Bank One, Columbus, N.A., a bank that issued Plaintiff a credit card ("Bank One") and Trans Union Corporation ("Trans Union"), a company that has been engaged, *inter alia*, in the business of debt collection. In addition to the FDCPA and Section 349, plaintiff alleges causes of action against defendants in common law fraud.

Plaintiff's claims in the action commenced under docket number 96–3004, which are the subject of the motions presently before the court, arise out of a letter dated June 15, 1995, which advised plaintiff of a $40.00 outstanding balance on a credit card issued by defendant Bank One (the "June 15 Letter"). Plaintiff does not dispute the validity of the debt sought to be collected. Instead, his lawsuit alleges that the June 15 Letter violated the statutes referred to above. Plaintiff, who originally commenced this action on behalf of himself only, was granted leave to file an amended complaint styled as a class action. Plaintiff seeks to represent a class of individuals who received letters similar to the June 15 Letter. On his own behalf and on behalf of a class of all others similarly situated, Plaintiff seeks both compensatory and punitive damages. It was agreed that a class certification motion would be deferred until after decision on motions for summary judgment.

Both defendants Bank One and Trans Union move for summary judgment on all claims. Plaintiff, on behalf of himself and the putative class, moves for partial summary judgment. Defendant Bank One seeks summary judgment on the ground that it is not a "debt collector" within the meaning of the FDCPA and therefore cannot be liable under that statute. Both Bank One and Trans Union seek summary judgment on the merits of the FDCPA and General Business Law claims on the ground that the June 15 letter cannot be said to violate either statute. Plaintiff, on the other hand, seeks partial summary judgment against both defendants. Plaintiff seeks entry of an order finding, as a matter of law, that defendant Bank One is a debt collector within the meaning of the FDCPA. Plaintiff also seeks an order holding that the June 15 Letter violated the FDCPA on its face and that both defendants violated by the FDCPA by use of the debt collection process referred to as the "Collets" system, as described below.

## BACKGROUND

### Factual Background

When he received the June 15 Letter, plaintiff was a law student who appears to have had some familiarity with the consumer protection statues that are alleged to have been violated herein. According to plaintiff, upon receipt of the June 15 Letter, he became immediately concerned about the status of his credit rating and attempted to contact Trans Union. Because the June 15 Letter contained only an "800" telephone number (which was noted to be a telephone number for Bank One) and plaintiff wished to communicate directly with Trans Union, plaintiff called directory assistance to obtain the telephone number of Trans Union in its Dublin, Ohio offices.

Plaintiff asserts that he spoke to an individual at Trans Union who informed him that Trans Union did not have access to plaintiff's files concerning the $40.00 debt and that he would have to contact Bank One directly. Plaintiff also asserts that he was informed by the Trans Union employee, who plaintiff identifies as a woman known as Jill Bates, that Trans Union did not send the June 15 Letter but that the letter was sent by Bank One. Plaintiff further states that he was told that Bank One is allowed to send collection letters on Trans Union stationery as part of a computerized debt collection system known as the "Collets" system.

Defendants dispute that this telephone call ever took place and state that Jill Bates was not employed by Trans Union at the time when plaintiff alleges to have had the above-referenced conversation. In any event, plaintiff, who alleges that he was upset by the fact that Bank One appeared to the plaintiff to be sending out collection letters on the stationery of a credit agency, asked to be put in contact with the Trans Union legal department. When he was not contacted by anyone from the Trans Union legal staff, plaintiff commenced this action.

### The Allegations of the Complaint

Plaintiff alleges that the June 15 Letter violates that FDCPA in various respects. Specifically, Defendants are alleged to have violated 15 U.S.C. §§ 1692e(9), 1692g, 1692e(10), 1692e(16) and 1692e(2)(A). Each of these sections make it unlawful to make certain false representations in connection with the collection of a debt.[1] Defendants are also alleged to have violated section 1692g, commonly referred to as the "validation notice" requirement of the FDCPA. That provision requires a debt collector to advise the consumer of, inter alia, a thirty day period in which to contest the existence of the debt and be furnished with proof of its validity. Plaintiff seeks to impose liability under the FDCPA on Bank One, as well as Trans Union, by alleging that Bank One, by its participation in the "Collets" system, became a "debt collector" within the meaning of the FDCPA and can therefore be liable for violations thereof.

### The "Collets" System

It is undisputed that Bank One entered into an agreement with Trans Union so that the latter could aid the former in the collection of its debts. The agreement between Bank One and Trans Union is memorialized in a written contract. Pursuant to that contract, Trans One agrees to assist Bank One in its collection activities. The collection service, referred to as the "Collets" system, is described as providing Bank One with "a series of collection letters." Trans Union states that it created the letters after conferring with Bank One regarding the criteria under which debtors would be sent letters. The letters were revised after review and comment by Bank One personnel. Thereafter, Trans One prepared final drafts of the letters.

Trans One arranged for the printing and mailing of the letters to be performed by a company known as Lason Systems, Inc. ("Lason"). Bank One electronically transmitted names, addresses and account information of debtors who were to receive letters directly to Lason. Lason then printed the letters and had them mailed. Bank One has no corporate affiliation with Lason.

Under its agreement with Bank One, Trans Union had no access to debtor files

---

**1.** Section 1692e(9) prohibits the use of any communication that "creates a false impression as to its source, authorization or approval." 15 U.S.C. § 1692e(9). Section 1692e(10) makes it unlawful to use any "false representation or deceptive means to collect or attempt to collect any debt ..." 15 U.S.C. § 1692e(10). Section 1692e(16) makes it un- lawful to represent or imply that a debt collector is operating or employed b a consumer reporting agency. 15 U.S.C. § 1692e(16). Section 1692e(2)(A) makes it unlawful to falsely represent "the character, amount or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

and no direct communication with debtors. Nor did Trans Union negotiate payment of debts with debtors. Instead, Trans Union's role was limited to promptly forwarding to Bank One all payments, correspondence or other communications received by Bank One debtors. Trans One's payment for services was not based upon debts collected, but solely upon the number of letters sent. As noted, the letters sent out by Lason directed consumers with questions to call Bank One at an "800" telephone number. The Collets letters state clearly that the telephone number will allow the debtor to reach Bank One directly. The consumer is not given any telephone number at which to reach Trans Union.

*The June 15 Letter*

The June 15 Letter bears the Trans Union logo in the upper right hand corner. The upper half of the letter refers to the Bank One credit card division. The Columbus, Ohio address listed for Bank One is the same post office box address listed for Trans Union. The text of the letter reads as follows:

Dear Robert E. Sokolski:

We at Trans Union are a national credit bureau, and we are writing out of concern for your credit rating.

Our files now show your Bank One credit card amount as being up to date. However, your payment is late and your account will soon be reported as past due.

To avoid damaging your credit record, please pay the amount at once.

Bank One has permitted us to contact you about this, because neither of us wants to see you harm your credit standing.

Please sent your payment at once in the enclosed envelope. Include the perforated statement above to insure proper credit to your account. If you have questions, call Bank One toll free at 1–800–[xxx–xxxx].

For your own benefit, please protect your credit record by paying now.

Sincerely,

Trans Union

475 Metro Place North, Suite 208

Dublin, OH

At the bottom of the letter, in single spaced, significantly smaller, typeface, the June 15 Letter sets forth the validation notice described above. This notice includes the procedure for obtaining documentation regarding the validity of the debt and all information required to be disclosed by 15 U.S.C. § 1692g.

*DISCUSSION*

*The Parties' Motions*

As noted above, Bank One and Trans Union have moved for summary judgment dismissing the complaint. Plaintiff has moved for partial summary judgment declaring·that the June 15 Letter violates the FDCPA. Summary judgment is appropriate only if there are "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). On motions for summary judgment the court will not try issues of fact, but will determine only if there are issues to be tried. *See Donahue v. Windsor Locks Bd. Of Fire Commissioners,* 834 F.2d 54, 55 (2d Cir.1987).

With these principles in mind, the court will first consider Bank One's contention that it is not a debt collector within the meaning of the FDCPA and therefore cannot be liable under that statutory scheme. The court will then consider the parties' motions for summary judgment on the merits.

*Bank One's Status As A Debt Collector*

The FDCPA prohibits deceptive and misleading practices by "debt collectors." 15 U.S.C. § 1692e. The statute specifically defines debt collectors as those engaged in "any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or *due another.*" 15 U.S.C. § 1692e (emphasis added). Thus,

by its terms, the FDCPA limits its reach to those collecting the dues "of another" and does not restrict the activities of creditors seeking to collect their own debts. *Maguire v. Citicorp Retail Services, Inc.,* 147 F.3d 232, 235 (2d Cir.1998), *Harrison v. NBD Inc.,* 968 F.Supp. 837, 841 (E.D.N.Y.1997). When restricting the reach of the FDCPA to exempt creditors, Congress recognized that the activities of creditors seeking to collect their own debts are restrained by the creditors' desire to retain their good will with consumers. Those collecting debts due to another were thought to be not similarly restrained and therefore more likely to engage in the type of unscrupulous activities the act seeks to prevent. *Harrison,* 968 F.Supp. at 841.

There is, however, one situation specifically recognized by the FDCPA, when a creditor is subject to the strictures of the statute. That situation exists when the creditor attempts to collect its own debts by using "any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). The imposition of liability in this case recognizes the fact that when a creditor uses a name other than his own, the motivation to protect the good will in his own name is absent and the likelihood for abusive debt collections practices returns.

 A creditor may be found liable under section 1692a(6) if, in the course of collecting its own debts, it "pretends to be someone else" or uses "a pseudonym or alias." *Maguire,* 147 F.3d at 235 (quoting *Villarreal v. Snow,* 1996 WL 473386 at *3 (N.D.Ill. Aug.19, 1996). The use of an alias, however, is not the only situation where a creditor can be deemed to be a debt collector under the FDCPA. Although the Second Circuit in *Maguire* quoted with approval from *Villarreal,* this court does not read that case as limiting a creditor's liability only to those situations where a fictitious third party debt collector is created. Instead, the court holds that liability can arise under 15 U.S.C.

§ 1692(a)(6) from a creditor's participation in a prohibited arrangement known as "flat rating."

A "flat rater" is described as someone who sells a creditor a series of "dunning" or demand letters, bearing the letterhead of the flat rater's collection agency. The collection agency of the flat rater, however, is not actually involved in the collection of the creditor's debts, but merely sells the creditor collection letters. The FDCPA prohibits flat-rating and makes it unlawful to furnish any form used to create a false belief that a third party is involved in the collection of a debt, 15 U.S.C. § 1692j, because of the practice's "inherently deceptive" impression that there is a third party engaged in the collection of the debt when, in fact, that party is doing nothing more that selling a set of letters. *In re Scrimpsher,* 17 B.R. 999, 1011 (Bkrtcy. N.D.N.Y.1982) (quoting S.Rep. No. 382, 95th Cong., 1st Sess. 5 (1977), reprinted in 1977 U.S.Code Cong. & Ad. News 1699).

Under the FDCPA statutory scheme, the entity furnishing collection forms used to create the false belief that they are involved in the collection of a debt, is liable as a debt collector. 15 U.S.C. § 1692j. While 15 U.S.C. § 1692j is silent as to the creditor's liability under a flat rating arrangement—assigning liability only to the party *furnishing* the form—a creditor participating in the flat-rating arrangement can be liable under the provision of the FDCPA prohibiting a creditor from using a name to create the false impression that a third party is involved in the collection of the creditor's debt. 15 U.S.C. § 1692a(6).

Plaintiff describes the arrangement between Bank One and Trans Union as a flat rating arrangement and argues that Bank One is liable for its participation in this arrangement under 15 U.S.C. § 1692(a)(6) and Trans Union, as the party that furnished Bank One with the dunning letters, is liable for furnishing the letters under section 1692j.

■ The court has examined the Collets system under which Trans Union sent letters on Bank One's behalf and holds that the arrangement cannot be characterized as anything other than a flat rating arrangement as described above. While it is true that Bank One identifies itself in the body of the June 15 Letter as the destination for the 800 telephone call, the letter conveys the impression that Bank One is using Trans Union as a collection agency. Trans Union's activities, however, are limited to the furnishing of collection letters. Trans Union does not receive the files of the debtors and any correspondence received by Trans Union is sent directly to Bank One. Trans Union has no authority to negotiate collection of debts and is not paid a percentage of debts collected. Instead, Trans Union receives a flat fee based upon the number of letters sent. These circumstances fall squarely into the definition of flat rating as described by Congress.

This case falls in sharp contrast with cases where courts have refused to find that a creditor is a debt collector. In *In re Scrimpsher*, 17 B.R. 999 (Bkrtcy. N.D.N.Y.1982), for example, in addition to sending dunning letters, the collection agency offered a "complete range of collection services," including direct contact with debtors, the location of debtor assets and referrals to collection attorneys. *Scrimpsher*, 17 B.R. at 1007–08. Similarly, in *Epps v. Etan Industries Inc.*, 1998 WL 851488 at *2–4 (N.D.Ill. December 1, 1998), no flat rating arrangement was found where the collection agencies activities included active communication and negotiation with debtors.

Here, the activities of Trans Union never went beyond coordinating the mailing of letters and forwarding responses to Bank One. This arrangement allowed Bank One to be involved in the collection of its own debts while also appearing to use the services of a collection agency. Under these circumstances, Bank One is properly held liable as a debt collector under 15 U.S.C. § 1962(a)(6).

The problem with plaintiff's assertion that Trans Union violated 15 U.S.C. § 1692j, however, lies in the fact that this court has previously held that it was too late in the litigation to allow plaintiff to assert this claim in this lawsuit. Plaintiff has previously moved to amend his complaint to assert a claim pursuant to 15 U.S.C. § 1692j. In an order dated November 12, 1998, this court denied plaintiff leave to so amend his complaint. In view of the court's ruling regarding plaintiff's attempted amendment of his complaint, the court expresses no opinion regarding Trans Union's liability for violation of 15 U.S.C. § 1692j.

*Violation Of The Validation Notice*

In addition to arguing that defendants are liable for violating the prohibition against flat rating, plaintiff argues that defendants are liable under the FDCPA for failing to comply with the validation requirement of 15 U.S.C. § 1692(g). Plaintiff's difficulty with the validation notice stems from two references in the June 15 Letter to payment being required to be made "at once" or "now." Specifically, the June 15 Letter states, "[t]o avoid damaging your credit record, please pay the amount at once." The letter further states, "[f]or your own benefit, please protect your credit record by paying now." According to Plaintiff, this language, coupled with the small typeface of the validation notice, contradicts the validation notice and renders the June 15 Letter in violation of the FDCPA.

When determining whether a communication violates the FDCPA, the Second Circuit has held clearly that the court is to apply an objective standard, measured by how the least sophisticated consumer would interpret the letter. *Russell v. Equifax, A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). If this "least sophisticated consumer" would be confused as to his or her rights under the FDCPA, the statute is violated.

In the case of the validation notice, it has been held clearly that contradictory language regarding a consumer's rights to obtaining evidence of the validity of a debt violates the FDCPA. In *Russell*, the Second Circuit held the FDCPA was violated when a collection letter containing the validation notice on the back also stated, on the front of the letter, that the debtor must take action within ten days. Holding that the FDCPA is intended to protect consumers from this type of contradictory message, the Second Circuit held that the letter violated the FDCPA on its face. *Russell*, 74 F.3d at 34.

Specifically, the court held that when a notice "contains language that 'overshadows or contradicts' other language informing a consumer of her rights, it violates the Act." *Russell*, 74 F.3d at 34 (quoting *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir.1991)). *See also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85–86 (2d Cir.1998) (request for "immediate payment" overshadowed validation notice rendering letter violative of FDCPA). *Accord Monokrousos v. Computer Credit, Inc.*, 984 F.Supp. 233, 234 (S.D.N.Y.1997) (letter held to violate FDCPA where validation notice was contradicted by request for payment prior to expiration of thirty day validation period).

■ Here, as in *Russell* and *Savino*, the June 15 Letter's request for immediate action overshadows the thirty day validation notice. It matters not that the validation notice appeared on the front of the June 15 Letter, as opposed to appearing on the back of the notice as in the *Russell* case. The message is no less contradictory. The consumer is being told to act immediately to protect his credit rating, while at the same time being told that he has thirty days in which to obtain information regarding the validity of the debt. Because the language of the June 15 Letter would make the least sophisticated consumer uncertain as to his or her rights, the FDCPA is violated.

*The Bona Fide Error Defense*

■ Trans Union argues that even if the June 15 Letter violated the FDCPA, Trans Union should not be held liable on the ground that they are entitled to the benefit of the "bona fide error" defense of 15 U.S.C. § 1692k(c). That section of the FDCPA provides that a debt collector may not be held liable if he can show, by a preponderance of the evidence, that his violation of the act "was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Under the circumstances present here, the court holds that Trans Union is not entitled to the aforementioned defense. Construing this defense in the context of a violation of the validation notice requirement, the Second Circuit has held that "[o]nce it is shown that defendant sent [the improper notice] and that they failed to fulfill the requirements of the Act, strict liability is imposed." *Russell*, 74 F.3d at 36. In view of this precedent, the court holds that under the circumstances present, Trans Union is not entitled to the benefit of the bona fide error defense.

In view of the foregoing, the court holds that both Bank One and Trans Union have violated the requirements of 15 U.S.C. § 1692g, which sets forth the requirements for a validation notice, and 15 U.S.C. § 1692e(10), which prohibits the use of any false representation or deceptive means to collect a debt. *See Vera v. Trans–Continental Credit and Collection Corp.*, 1999 WL 163162 (S.D.N.Y. March 24, 1999) (misleading validation notice violates both sections 1692g and 1692e(10)).

*Remaining Violations Of The FDCPA*

Plaintiff also claims that defendants have violated 15 U.S.C. § 1692e(9), which prohibits the use of any communication that "creates a false impression as to its source, authorization or approval," 15 U.S.C. § 1692e(16), which makes it unlawful to represent or imply that a debt collec-

tor is operating or employed by a consumer reporting agency and 15 U.S.C. § 1692e(2)(A) which makes it unlawful to falsely represent "the character, amount or legal status of any debt." The court holds that defendants have not violated these provisions of the FDCPA.

15 U.S.C. § 1692e(9) has not been violated because the June 15 Letter, which contained the names of both Trans Union and Bank One was, indeed, mailed by Trans Union (albeit through its arrangement with Lason) and therefore, in the court's view, did not "creates a false impression as to its source, authorization or approval." 15 U.S.C. § 1692e(16) was not violated because there were no false representations regarding the employment of any defendant by a collection agency. Bank One did not purport to be a collection agency and Trans Union, whose role in this case was limited to the mailing of letters is, has been, in fact, engaged in the collection business. Finally, 15 U.S.C. § 1692e(2)(A) was not violated because, as plaintiff admits, there was never any question as to the validity of the $40.00 debt and therefore, there was no false representation regarding the "character, amount or legal status" of the debt at issue.

*State Law Claims: Section 349 Of The General Business Law and Common Law Fraud*

Section 349 of the New York State General Business Law ("Section 349") makes unlawful "deceptive acts or practices in the conduct of any business ..." N.Y.Gen.Bus.L. § 349(a). The statute creates a private right of action to any person "who has been injured by reason of any violation" of the act. N.Y.Gen.Bus.L. § 349(h). A private individual suing under the act can seek injunctive relief and/or recover actual damages or fifty dollars, whichever is greater. Additionally, in the case of wilful or knowing violations, the court has discretion to award a plaintiff three times his actual damages up to $1,000. A court may also award a reasonable attorney's fee to a prevailing plaintiff. N.Y.Gen.Bus.L. § 349(h).

The elements of a claim under Section 349 are: (1) a consumer-oriented materially misleading practice and, (2) injury to plaintiff as a result thereof. *Berrios v. Sprint Corp.*, 1998 WL 199842 at * 3 (E.D.N.Y. March 16, 1998); *Steinmetz v. Toyota Motor Credit Corp.*, 963 F.Supp. 1294, 1306 (S.D.N.Y.1997). Unlike the FDCPA, Section 349 is violated, not when the "least sophisticated consumer" would be confused, but when "a reasonable consumer would have been misled by defendant's conduct." *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 636 (2d Cir.1996); *Berrios*, 1998 WL 199842 at *3.

To recover on a claim pursuant to Section 349, plaintiff's injury must stem from reliance on the allegedly deceptive act. *Berrios* at *4; *Gershon v. Hertz Corp.*, 215 A.D.2d 202, 203, 626 N.Y.S.2d 80, 81 (1st Dep't 1995); *Goshen v. Mutual Ins. Co. of New York*, 1997 WL 710669 at *13 (N.Y.Supp.1997). Similarly, to recover on a common law claim of fraud, plaintiff must plead and prove reliance on the fraudulent act resulting in damage. *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir.1993), *cert. denied*, 510 U.S. 1112, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994); *Goshen v. Mutual Ins. Co. of New York*, 1997 WL 710669 at *13 (N.Y.Sup.1997).

Defendants seek dismissal of the Section 349 claim on the ground that plaintiff cannot properly allege or prove reliance on the June 15 Letter and injury resulting therefrom. Defendants' argument is based upon the facts, uncontroverted by plaintiff, that the $40.00 debt referred to in the June 15 Letter was a valid debt which plaintiff never intended to dispute and plaintiff was well aware of his rights under the FDCPA. Defendants argue that since plaintiff never had any intention of disputing the validity of the debt, any confusion as to his thirty day validation rights could not have had any

effect on plaintiff. Under these circumstances, plaintiff cannot prove that he relied on the faulty validation notice and that this reliance resulted in any injury. The court agrees.

In this district, it has recently be held that a plaintiff alleging a deprivation of rights under the FDCPA, who cannot also allege reliance on the deceptive act, cannot recover under Section 349. *See Berrios v. Sprint Corp.,* 1998 WL 199842 at * 3 (E.D.N.Y. March 16, 1998). In *Berrios,* the plaintiff alleged a violation of the FDCPA as well as a violation of Section 349. While the court found a *per se* violation of the validation requirement of the FDCPA, the court also held that the FDCPA violation, standing alone, did not require a finding that Section 349 was violated. First, as noted, the standard to be applied in determining whether the conduct forming the basis of the complaint is unlawful is different under the two statutes. More importantly, Section 349 requires injury stemming from reliance on the allegedly deceptive act. The debtor in *Berrios,* like the debtor here, can neither allege nor prove injury stemming from reliance on the improper validation notice. As noted, plaintiff never intended to dispute the validity of his debt and was well aware of his rights under the FDCPA. Under these circumstances, plaintiff can neither prove that he relied on the June 15 Letter nor that his reliance resulted in any damage. These facts are fatal to plaintiff's Section 349 and his common law fraud claims. Accordingly, the court grants defendants summary judgment motion with respect to plaintiff's claims of common law fraud and any claims pursuant to section 349 of the New York General Business Law.

## CONCLUSION

For the foregoing reasons, the court rules on the parties' summary judgment motions as follows. Plaintiff's motion for partial summary judgment holding that defendant Bank One is a debt collector pursuant to 15 U.S.C. § 1692(a)(6) is granted. Plaintiff's motion for summary judgment on the claim that Defendant Trans Union is liable for furnishing forms to be used in a flat-rating arrangement in violation of 15 U.S.C. § 1692j is denied. Plaintiff's motion for summary judgment against both defendants with respect to the claim that the June 15 Letter violates the validation requirement of the FDCPA (15 U.S.C. § 1692g) is granted.

The motions of defendants Bank One and Trans Union for summary judgment dismissing all claims brought pursuant to 15 U.S.C. § 1692e(9), 15 U.S.C. § 1692e(16) and 15 U.S.C. § 1692e(2)(A) are granted. Defendants' motions for summary judgment dismissing plaintiff's state law claims pursuant to section 349 of the New York General Business Law and all claims for common law fraud are also granted.

The parties are directed to contact the court to arrange for a status conference to discuss all matters remaining in this litigation.

SO ORDERED