**Donna M. RUSSELL, Plaintiff–Appellant,**

v.

**EQUIFAX A.R.S., and CBI Collections, Defendants–Appellees.**

No. 48, Docket 95–7007.

United States Court of Appeals, Second Circuit.

Argued Aug. 30, 1995.

Decided Jan. 16, 1996.

Louis Rosenberg, UAW Legal Services Plan, Indianapolis, Indiana (Kathleen Stevenson, UAW Legal Services Plan, Syracuse,

New York; Fred Miller, UAW Legal Services Plan, Detroit, Michigan, of counsel), for Plaintiff–Appellant.

Deborah H. Karalunas, Syracuse, New York (Bond, Schoeneck & King, Syracuse, New York, of counsel), for Defendants–Appellees.

Before: CARDAMONE, MINER, and CALABRESI, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal involves the application of the Fair Debt Collection Practices Act of 1977 (Act), 15 U.S.C. §§ 1692 to 1692o (1994). Plaintiff Donna M. Russell (plaintiff or consumer) appeals from a judgment of the United States District Court for the Northern District of New York (Scullin, J.) entered November 28, 1994 granting summary judgment to defendant Equifax A.R.S. (formerly CBI Collections) (Equifax or defendant). Russell contends that the district court's construction of the Act was wrong as a matter of law and should be reversed.

What happens to a consumer who is unable to pay her creditors has changed greatly from those days when a debtor like Wilkins Micawber was sent to King's Bench Prison because he had no money or property available to pay his debts. *See* Charles Dickens, *David Copperfield* (Part One) 201 (Peter Fenelon Collier & Son ed. 1900). While debt collectors are, of course, charged with the duty of collecting debts that are owed, they may not do so today in a manner that prevents consumers from exercising their legal rights. In enacting the Fair Debt Collection Practices Act Congress pointed out that "[m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts." 15 U.S.C. § 1692(c). As a consequence of its concern, the legislature armed consumers with a shield against the overly zealous debt collector; this shield is particularly important in our modern computer-driven world. Because we hold that Russell in this case was entitled to its protection, we reverse the district court's grant of summary judgment for defendant and remand the case for further proceedings.

## BACKGROUND

Russell owed a debt amounting to $1,367.36 to the J.C. Penney's department store, and received two collection notices from Equifax regarding it. Equifax is a debt collection agency governed by the Act. *See* 15 U.S.C. § 1692a(6). The first notice was dated February 26, 1992. It was captioned **"IMMEDIATE COLLECTION NOTICE"** and stated in relevant part:

> YOUR ACCOUNT, AS INDICATED BELOW, HAS BEEN PLACED WITH OUR COMPANY FOR **IMMEDIATE COLLECTION**. IT IS OUR PRACTICE TO POST UNPAID COLLECTIONS IN THE AMOUNT OF $25 OR MORE TO INDIVIDUAL CREDIT RECORDS. IF YOU DO NOT DISPUTE THIS CLAIM (SEE REVERSE SIDE) AND WISH TO PAY IT WITHIN THE NEXT 10 DAYS WE WILL NOT POST THIS COLLECTION TO YOUR FILE.
>
> . . . .
>
> **SEE IMPORTANT INFORMATION ON REVERSE SIDE.**

The back of the notice provided the information required by § 1692g(a) of the Act.

> UNLESS YOU NOTIFY US WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, WE SHALL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY US IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE: (1) THAT THIS DEBT OR ANY PORTION THEREOF, IS DISPUTED, OR (2) THAT YOU REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, WE WILL OBTAIN VERIFICATION OF THIS DEBT, A COPY OF ANY JUDGMENT (IF A JUDGMENT IS INVOLVED), OR THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR, AND MAIL A COPY AND/OR PROVIDE THE NAME OF THE CREDITOR TO YOU.

The cited language, commonly referred to as a "validation notice," gives the consumer the

information necessary to challenge the debt allegedly owed before making payment to the independent collection agency.

Equifax sent a second notice dated March 17, 1992 to Russell. It was captioned "**CONTACT THIS OFFICE AT ONCE**" and stated:

> FURTHER DELAY ON YOUR PART COULD BE COSTLY. AT THIS POINT ONLY YOUR ACTION WILL DETERMINE FUTURE HANDLING. WE **URGE** YOUR COOPERATION FOR YOUR OWN SAKE. **PAYMENT IN FULL** WITHIN 5 DAYS IS NOW DEMANDED. **WHAT WILL YOUR ANSWER BE?**

Based on the receipt of these two notices, plaintiff commenced an action against defendant in November 1992. Her complaint alleged that the February and March notices violated two provisions of the Act. First, she contended that the notices' contradictory language violated § 1692g. Second, she asserted that defendant made false representations in the notices in violation of § 1692e(10). Russell asked for an award of costs and attorneys' fees pursuant to § 1692k. Equifax moved for summary judgment and also sought attorneys' fees, contending that plaintiff had brought her action in bad faith. *See* § 1692k(a)(3). Russell cross-moved for summary judgment with respect to liability.

The district court granted summary judgment to defendant Equifax. It found that the language of the notices did not rise to the level of being a "threatening contradiction," nor, it held, did the language overshadow the validation notice displayed on the reverse side of the initial or February notice. Thus, the district court ruled that defendant had not contravened § 1692g. It further determined that defendant did not make intentional false representations in order to deceive the plaintiff and, therefore, found no violation of § 1692e(10). Judgment was accordingly entered for defendant on November 28, 1994. From this judgment, Russell appeals.

## DISCUSSION

Both parties moved for summary judgment and there is no genuinely disputed material issue of fact. Only legal issues, which we review *de novo,* are contested.

Before entering a discussion of the merits of those issues, it is helpful to trace a brief outline of the most salient features of the Fair Debt Collection Practices Act. The Act, consisting of 16 succinct sections, is based on Congress' findings that debt collection abuses are serious and widespread, and a finding by the National Commission on Consumer Finance, referred to in the legislative history, which showed that the "vast majority of consumers who obtain credit fully intend to repay their debts." S.Rep. No. 95–382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1697 (Legis.History). Congress explained that although unscrupulous collectors comprise only a small portion of the industry, the less ethical debt collectors threaten consumers with violence, use profane or obscene language, make telephone calls at unreasonable hours, impersonate public officials and lawyers, disclose debtors' personal affairs to employers and engage in other sorts of unscrupulous practices. *Id.* at 1696.

The Act's purpose is to eliminate such practices. *See* § 1692(e); Legis.History at 1696. Some enumerated actions—for example, threats of violence and repeated telephone calls intended to harass—are expressly forbidden. § 1692d. The Act also bars the general use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. Section 1692e, without limiting the general applicability of the bar against false and deceptive methods of debt collecting, then sets forth in 16 subdivisions specific examples of false, deceitful or misleading conduct that violates the Act.

Further, a debt collector violating the Act is liable for actual damages, plus costs and reasonable attorney's fees, as well as any other damages not exceeding $1,000 found appropriate by a trial court. *See* § 1692k(a). Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages. However, a debt collector may escape liability if it can demonstrate by a preponderance of the evidence that its "viola-

tion [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." § 1692k(c). With this overview of the Act in mind, we pass to the merits.

## I The February Notice

Section 1692g of the Act states that when an independent debt collector solicits payment it must provide the consumer with a detailed validation notice. The notice must include the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests. § 1692g(a). And, as already noted, the Act further prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e. An example of such illegal conduct is the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." § 1692e(10). The plaintiff in the case at hand alleged violations of §§ 1692g and 1692e(10).

■ When determining whether § 1692g has been violated, an objective standard, measured by how the "least sophisticated consumer" would interpret the notice received from the debt collector, is applied. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) (adopting test for § 1692e); *see also Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2d Cir.1993). The Act is aimed at protecting consumers in general from abusive debt collection practices and the test is how the least sophisticated consumer—one not having the astuteness of a "Philadelphia lawyer" or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives. This least-sophisticated-consumer standard best effectuates the Act's purpose of limiting the "suffering and anguish" often inflicted by independent debt collectors. Legis.History at 1696. We apply this test

when considering claims made pursuant to § 1692g.

■ The February notice mailed by Equifax in the instant case contained a contradictory message. We agree with defendant that the back of the notice provided plaintiff with all the information necessary to contest the claim (as required by the Act), including the right to contest the debt's validity within 30 days. But the front of the notice confusingly and contradictorily states that "[i]f you do not dispute this claim (see reverse side) and wish to pay it within the next 10 days we will not post this collection to your file" and "[i]t is our practice to post unpaid collections in the amount of $25 or more to individual credit records."

The consumer was thus presented with two different and conflicting statements. If she believed the message printed on the back of the notice, she would understand, as the Act intends her to, that she had 30 days to decide whether to contest the claim. But, if she believed what was printed on the front of the notice, she would fear that unless she decided not to dispute the claim *and* to pay it within 10 days, the debt she owed would be "posted" to her credit file.

The Act is designed to protect consumers from precisely this sort of contradictory message. When the least sophisticated consumer reads such a communication, she could readily believe—despite the inclusion of the validation notice—that were she to take any course other than payment to Equifax within 10 days, it would permanently affect her credit record. When a notice contains language that "overshadows or contradicts" other language informing a consumer of her rights, it violates the Act. *See Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) ("the juxtaposition of two inconsistent statements" renders the notice invalid under § 1692g). In the instant case the validation notice printed on the back of the February notice was contradicted and overshadowed by the warning on the front that the collection would be posted to Russell's file unless she chose not to dispute it *and* paid it within the next 10 days.

The trial court incorrectly concluded that the February notice "did not threaten plain-

tiff's credit rating … if plaintiff did not pay her debt within 10 days." At oral argument, even Equifax's counsel was unable to explain what the phrase "posting to your file" meant. If the lawyer representing the author of the notice cannot define what this phrase means, we must assume the statement's quite threatening tone will be perceived as such by the least sophisticated consumer. As the Supreme Court has held in the general context of consumer protection—of which the Fair Debt Collection Practices Act is a part—"it does not seem 'unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.'" *FTC v. Colgate–Palmolive Co.,* 380 U.S. 374, 393, 85 S.Ct. 1035, 1047, 13 L.Ed.2d 904 (1965) (quoting *Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 340, 72 S.Ct. 329, 330–31, 96 L.Ed. 367 (1952)).

■ The district court also ruled that plaintiff needed to demonstrate not only a contradiction in the language used in the notice, but a "threatening contradiction," citing *Smith v. Financial Collection Agencies,* 770 F.Supp. 232, 237 (D.Del.1991). Although the February notice in our view does in fact show a "threatening contradiction," it was error to invoke this heightened test. *Smith* is not good law in this Circuit. The question is whether, from the perspective of the least sophisticated consumer, language contained in the notice overshadowed or contradicted the mandatory validation notice; if so, then the Act is violated. It is unnecessary to prove the contradiction is threatening.

■ A notice is overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights. It is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be clearly conveyed. *See Swanson v. Southern Or. Credit Serv., Inc.,* 869 F.2d 1222, 1225 (9th Cir.1988) (per curiam). Here the initial February notice failed to convey the validation information effectively. We recognize there are many cunning ways to circumvent § 1692g under cover of technical compliance, *see Miller v. Payco–General Am. Credits, Inc.,* 943

F.2d 482, 485 (4th Cir.1991), but purported compliance with the form of the statute should not be given sanction at the expense of the substance of the Act. Since the language on the front of the notice overshadowed and contradicted the language on the back of the notice, causing the validation notice to be ineffective, the February notice violated § 1692g as a matter of law.

■ In addition, a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate. *See Clomon,* 988 F.2d at 1319. The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act. *See Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 25 (2d Cir.1989). Because the initial collection notice in the instant case was reasonably susceptible to an inaccurate reading, it was also deceptive within the meaning of the Act.

## II The March Notice

In the ruling appealed from it was further wrongly held that the second or March notice did not "threateningly contradict nor [did it] overshadow the validation notice received 20 days earlier." First, as just discussed, an incorrect legal standard was applied: the contradiction need not be "threatening." It is sufficient that the second notice contradicted the first notice, in effect overshadowing the earlier validation notice, so as to cause the least sophisticated consumer not to understand her rights.

■ Second, the language in the March notice plainly overshadowed the February notice, even were the first notice read as Equifax urges (emphasizing the validation notice on the back of the form). The March notice admonished that "FURTHER DELAY … COULD BE COSTLY," urged Russell's cooperation "FOR HER OWN SAKE," and then demanded payment within five days. The trial judge's explanation that "there was no threat of legal action or harm by the debt collector that would lead the least sophisticated consumer to overlook her statutory rights" fails to read the notice in its context.

By demanding payment within five days, the debt collector gave the debtor only 25 days from the date of the first notice to decide whether to challenge the claim. This period of time is less than the 30 days required to be given a consumer under the Act. *See* § 1692g(a)(4). No consumer—much less the least sophisticated one—is expected to know that the language on the back of the first notice takes precedence over the second notice when the instructions contained in the two notices are read in combination. We think it plain that plaintiff would not realize she had a statutory right to dispute the debt within 30 days in the face of a second notice from the debt collector giving her only 25 days. *See Graziano,* 950 F.2d at 111. Hence, the March notice violates § 1692g. The March notice also violates § 1692e(10). Like the first notice, it advances a message that is open to an inaccurate yet reasonable interpretation by the consumer, and is therefore deceptive as a matter of law.

Finally, the trial court understandably thought the Act requires that defendant act intentionally, because the Act provides that a debt collector may escape liability if it can demonstrate that its violation of the Act was unintentional and a result of a bona fide error despite procedures to avoid the error. Nonetheless, plaintiff need not show intentional conduct under the Act to be entitled to damages. The unintentional acts of defendant are a defense to be raised against a claimed violation. Defendant offered no proof on this issue; it does not contest the plaintiff's allegation that it mailed the two collection notices. Once it is shown that defendant sent the February and March notices and that they failed to fulfill the requirements of the Act, strict liability is imposed. *See Bentley,* 6 F.3d at 63.

### CONCLUSION

Accordingly, we reverse the grant of summary judgment for defendant Equifax and remand this case for further proceedings not inconsistent with this opinion.