06-3147-cv
Jacobson v. Healthcare Financial Services, Inc.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

—————————————————————

August Term, 2007

(Argued:   November 19, 2007          Decided:   February 14, 2008 )

Docket No. 06-3147-cv

—————————————————————

GERSHON JACOBSON,

on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*,

*v.*

HEALTHCARE FINANCIAL SERVICES, INC.,

*Defendant-Appellee.*

—————————————————————

Before: WALKER and CALABRESI, *Circuit Judges*, and KEENAN, *District Judge*.[1]

—————————————————————

Appeal from a decision of the United States District Court for the Eastern District of New York (Glasser, *J.*), granting summary judgment to Defendant-Appellee on Plaintiff-Appellant's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and awarding attorneys' fees to Defendant-Appellee.

Affirmed in part, reversed in part, vacated, and remanded.

> LAWRENCE KATZ, Katz & Kleinman, Uniondale, N.Y., *for Plaintiff-Appellant*.
>
> BRIAN MILLER (David J. Gold, *on the brief*), New York, N.Y., *for Defendant-Appellee*.

—————————————————————

[1] The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Gershon Jacobson ("Jacobson") appeals from a June 6, 2006 decision of Judge I. Leo Glasser, which (1) granted summary judgment to Defendant-Appellee Healthcare Financial Services ("HFS") on Jacobson's claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA" or "the Act"), and (2) ordered Jacobson to pay attorneys' fees and costs to HFS. *Jacobson v. Healthcare Fin. Servs*, *Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y. 2006). Jacobson appeals both determinations.

We affirm the district court in part, reverse it in part, and vacate its judgment, both as to the merits of Jacobson's claim, and as to the award of costs and attorneys' fees. We remand the case to the district court for further proceedings consistent with this opinion.

## BACKGROUND

HFS is a "debt collector" within the meaning of the FDCPA. *See* 15 U.S.C. § 1692a(6). It sent a letter to Jacobson, demanding payment of a debt of $492.00 owed by Jacobson to a third party. The letter, dated July 13, 2004, stated:

> THIS ACCOUNT HAS BEEN ASSIGNED TO OUR OFFICE FOR COLLECTION.
>
> IF YOUR PAYMENT OR NOTICE OF DISPUTE IS NOT RECEIVED IN THIS OFFICE WITHIN 30 DAYS, WE SHALL RECOMMEND FURTHER ACTION BE TAKEN AGAINST YOU TO COLLECT THIS OUTSTANDING BALANCE.
>
> NOTE: THAT WE HAVE THE RIGHT TO REPORT THIS DEBT TO THE APPROPRIATE CREDIT BUREAU WHICH MIGHT HAVE A NEGATIVE IMPACT ON YOUR CREDIT RATING. MAKE YOUR CHECK OR MONEY ORDER PAYABLE TO HEALTHCARE FINANCIAL SERVICES.

Pursuant to HFS's obligations under the Act, this text was immediately followed by a "validation notice":

PLEASE READ BELOW

THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A
DEBT AND ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.

IN COMPLIANCE WITH THE PROVISIONS OF PARAGRAPH
809 OF THE CONSUMER CREDIT PROTECTION ACT,
AMENDMENTS, YOU ARE HEREBY NOTIFIED OF THE
FOLLOWING:

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS
AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE
THE VALIDITY OF THIS DEBT OR ANY PORTION
THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS
VALID.

IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30
DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL
OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A
COPY OF A JUDGEMENT AND MAIL YOU A COPY OF
SUCH JUDGEMENT OR VERIFICATION.

IF YOU REQUEST FROM THIS OFFICE IN WRITING,
WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS
OFFICE WILL PROVIDE YOU WITH THE NAME AND
ADDRESS OF ORIGINAL CREDITOR, IF DIFFERENT FROM
THE CURRENT CREDITOR.

Contending that HFS had violated the FDCPA by "divest[ing] the consumer of his rights to dispute the debt for thirty days after receipt of the collection letter," Jacobson filed a complaint on July 30, 2004. He purported to bring a nationwide class action on behalf of himself and all other consumers who had received similar communications from HFS.[2] Plaintiff did not allege any actual loss, but sought statutory damages and attorneys' fees.

---

[2] Jacobson has not, to date, sought class certification.

Rather than answer the complaint, HFS moved for its dismissal, and in the alternative asked for summary judgment. Concluding that the letter did not violate the statute, the district court granted summary judgment to HFS. *Jacobson*, 434 F. Supp. 2d at 139-41. Moreover, finding that plaintiff's action was brought "in bad faith and for the purpose of harassment," 15 U.S.C. § 1692k(a)(3), the court awarded attorneys' fees and costs to defendant. *Jacobson*, 434 F. Supp. 2d. at 141. This appeal followed.

## DISCUSSION

### I. The Merits

Summary judgment is appropriate where the moving party shows that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] The facts relevant to this appeal are undisputed, and we review *de novo* the district court's holding that the collection letter did not violate the FDCPA. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996).

In passing the FDCPA in 1977, legislators noted "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Finding existing laws inadequate to address the problem, Congress acted with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that "those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). These purposes inform the FDCPA's many provisions. Among other things, the Act regulates and restricts the acquisition of information about debtors. *Id.* §§ 1692b, 1692c. It further prohibits conduct whose natural consequence is to "harass, oppress, or abuse any person

---

[3] Neither party objects to the district court's decision to convert HFS's Rule 12 motion to a motion for summary judgment.

in connection with the collection of a debt." *Id.* § 1692d. And it bars the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e, while proscribing "unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.

As a response to "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," S. Rep. No. 95-382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699, the FDCPA gives the consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. 15 U.S.C. § 1692g(b). If the consumer notifies the debt collector in writing, "within the thirty-day period" afforded by the Act, that she disputes the debt or any portion of the debt, the debt collector must "cease collection." *Id.* The debt collector may resume collection activities only when it has obtained verification of the debt, and has mailed a copy of the verification to the consumer. *Id.* The thirty-day window is not a "grace period"; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity.[4] By the same token, however, "[t]he failure of a consumer to dispute the validity of a debt under [§ 1692g] may not be construed by any court as an admission of liability." 15 U.S.C. § 1692g(c).

---

[4] Our cases recognize the debt collector's right to demand payment, even within the thirty-day period, unless the customer submits a notice of dispute. *See, e.g, Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85-86 (2d Cir. 1998). This right has now been made explicit in the statutory text by the 2006 Amendments to the FDCPA. *See* Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-07 (2006) (inserting in 15 U.S.C. § 1692g(b) the following text: "Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.").

5

Significantly, the FDCPA does not assume that the recipient of a collection letter is aware of her right to require verification of the debt. Instead, the Act requires the debt collector, as the party in the better position to know the law, to inform the consumer of that right. Section 1692g(a) orders the debt collector to send a written notice, within five days of its initial communication with the consumer, stating the amount of the debt and the name of the creditor to whom the debt is owed, 15 U.S.C. §§ 1692g(a)(1) & (2). This validation notice must further include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." *Id.* § 1692g(a)(3). The notice must incorporate "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt." *Id.* § 1692g(a)(4). Finally, the notice must contain "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." *Id.* § 1692g(a)(5).

In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the statute protects the gullible as well as the shrewd. *Id.* at 1318. But in applying this standard, we bear in mind the Act's "dual purpose": in addition to protecting consumers against deceptive debt collection practices, the objective test we apply protects debt collectors from unreasonable constructions of their communications. *Id.* at 1320. Even in "crafting a norm that protects the naive and the credulous," we have "carefully preserved the concept of reasonableness." *Id.* at 1319. Accordingly, the FDCPA does not aid

plaintiffs whose claims are based on "bizarre or idiosyncratic interpretations of collection notices." *Id*. at 1320.

In this case, Jacobson concedes that the language of the validation notice, standing alone, would satisfy HFS's obligations under § 1692g(a). But that is not the end of the matter, for HFS has the obligation, not just to convey the information, but to convey it clearly. *Russell*, 74 F.3d at 35. Applying the least-sophisticated-consumer standard, we have held repeatedly that a debt collector violates § 1692g(a), even if the collector includes an accurate validation notice, if that notice is overshadowed or contradicted by other language in communications to the debtor. *See, e.g., Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998); *Russell*, 74 F.3d at 34.

A notice overshadows or contradicts the validation notice "if it would make the least sophisticated consumer uncertain as to her rights." *Russell*, 74 F.3d at 35.[5] We have said that this judicial gloss on the original text of the statute accords with the Act's overarching purpose of deterring deceptive conduct, and ensures that "purported compliance with the form of the statute [is] not . . . given sanction at the expense of the substance of the Act." *Id*. And Congress has now codified our approach by adding the following sentence to the statute: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."[6] 15 U.S.C. § 1692g(b) (as amended by the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-07 (2006)).

---

[5] In *Russell*, we rejected a formulation of the overshadowing / contradiction test which would have required the plaintiff to show that the contradiction is "threatening." *See Russell*, 74 F.3d at 35 (refusing to follow *Smith v. Fin. Collection Agencies,* 770 F. Supp. 232, 237 (D. Del. 1991)).

[6] This amendment took effect on October 13, 2006, too late to apply to this case. But, in any event, the new text confirms, rather than alters, the law of this Circuit.

In the event of a transgression, the FDCPA provides for enforcement by the Federal Trade Commission and by other administrative agencies. 15 U.S.C. § 1692*l*. But it also grants a private right of action to a consumer who receives a communication that violates the Act. *Id.* § 1692k. In addition to compensatory damages, *id.* § 1692k(a)(1), the Act empowers district courts to award "additional damages" of up to $1,000 per consumer, *id..* § 1692k(a)(2)(A), and mandates the award of attorneys' fees to successful plaintiffs. *Id.* § 1692k(a)(3). In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers like Jacobson[7] as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.

Jacobson asserts that the validation notice was overshadowed or contradicted, in three different ways, by the second paragraph of the letter. That paragraph reads as follows: "If your payment or notice of dispute is not received in this office within 30 days, we shall recommend further action be taken against you to collect this outstanding balance." We address in turn each of his three contentions.

---

[7] Jacobson brought the present action less than three weeks after receiving the letter in question.

A.  The Right to Dispute the Debt Before Payment

Plaintiff contends first that the letter might lead the least sophisticated consumer to be uncertain whether she had *any* right to dispute the debt at all before paying it.  If that were the case, the letter would violate § 1692g(a) under the well-established law of this Court.  Like the district court, however, we find no violation of the Act on this score.

As noted above, a debt collector is, as a general matter, entitled to demand immediate payment of a debt, and to threaten further action in the event of non-payment.  Our cases have recognized, however, that such demands may cause confusion about the right to dispute, and will sometimes, in that way, lead debt collectors to run afoul of the Act.  In *Russell v. Equifax*, for example, a debt collection agency sent a letter captioned as an "immediate collection notice," telling the consumer "if you do not dispute this claim (see reverse side) and wish to pay it within the next 10 days we will not post this collection to your file."  74 F.3d at 32.  On the reverse side of the letter, there was a validation notice accurately stating the nature of the recipient's right to dispute the debt.  *Id*.  Twenty days later, the debt collector sent another letter, demanding "payment in full within 5 days."  *Id*. at 33.  We found that both communications violated the FDCPA.  While the collector was technically within its rights to demand payment, the least sophisticated consumer would be left uncertain whether she had the option to dispute the debt, and to withhold payment while disputing it.  *Id*.

We elaborated on our approach to this kind of claim in *Savino v. Computer Credit, Inc.*, 164 F.3d at 85-86.  There, the front of the letter stated that the creditor "insists on immediate payment or a valid reason for your failure to make payment."  *Id.* at 84.  At the bottom, the letter also referred to an "IMPORTANT NOTICE ON BACK," where the information required by § 1692g(a) could be found.  *Id*.  The *Savino* court held that the notice violated the FDCPA.  By

9

demanding immediate payment on the front, and only informing the debtor of his right to dispute on the back, the notice, we concluded, would leave the least sophisticated consumer uncertain as to her right to dispute the debt. *Id* at 85-86.

Jacobson claims that "the actual holding of *Savino* is that an immediate demand for payment violates the Act even when it is presented with an alternative." Appellant's Br. at 11. We disagree; the *Savino* panel stressed that "a request for immediate payment d[oes] not, standing alone, violate the FDCPA." *Savino*, 164 F.3d at 85-86. Indeed, the *Savino* court went further and provided examples of "transitional language" designed to call attention to a validation notice, which would still allow a debt collector to demand immediate payment while complying with the Act. *Id.* at 86. That the debt collector in *Savino* itself violated the Act by requiring immediate payment "without *also* explaining that its demand did not override the consumer's rights under Section [1692g] to seek validation of the debt," *id.* (emphasis added), in no way supports Jacobson's extreme position.

The letter sent by HFS to Jacobson, though it demanded payment, adequately explained that the recipient had the right to seek verification of the debt. It presented Jacobson with two alternate ways of avoiding "further action": either pay the debt "within 30 days," or submit a notice of dispute, "within 30 days." This right to seek validation of the debt was further explained, not on the back of the demand letter, but on its face, below the initial statement, and in clear terms. In these circumstances, even the least sophisticated debtor would understand that she had the option to submit a notice of dispute, rather than pay the claimed sum. We therefore affirm the district court's decision to reject Jacobson's first argument.

B. The Thirty-Day Period: Starting Date

Plaintiff next argues that the letter's statement that further action would be taken unless payment or a notice of dispute was submitted "within 30 days" casts doubt on the starting date for the thirty-day period. A recipient, Jacobson asserts, would be uncertain as to whether the thirty-day period for submitting a notice began on the date of the letter (July 13, 2004), or instead started on the date Jacobson received it, which, the parties agree, was some days later. If that were so, the letter would violate the statute, for the latter date is the correct one under the Act. Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days *after receipt of the notice*" (emphasis added). We agree with the district court, however, that on the facts of this case, even the least sophisticated consumer would understand that the thirty-day period began only when the notice was received.

The first case Jacobson cites in support of his second argument, *Cavallero v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148 (E.D.N.Y. 1996), is not on point. The validation notice in that case stated explicitly that the debt would be assumed valid unless the recipient disputed the debt "within thirty (30) days *from the date of this notice*." *Id.* at 1151 (emphasis added). The district court quite rightly found a violation of the statute, for the notice expressly stated the wrong starting date. *Id.* at 1154. Here, by contrast, the contested statement says simply that payment or a notice must be submitted "within 30 days," without specifying when the period starts running.

While the letter is, therefore, perhaps ambiguous as to when the thirty-day period begins, the validation notice clarifies any possible ambiguity. It contains a clear and accurate statement of the starting date, informing Jacobson that he has "30 days from receiving this notice" to submit the notice of dispute. In this respect, the debt collector's statements – taken together – resemble those considered by this Court in *McStay v. I.C. System*, *Inc.*, 308 F.3d 188 (2d Cir.

11

2002), where we rejected a similar claim of overshadowing. In *McStay*, the letter threatened further action if the recipient had not paid the debt "after 30 days." *Id.* at 189. The front of the *McStay* letter contained no reference to the debtor's right to dispute the debt, but directed the reader's intention to "important information" on the reverse side. There, the debtor would find an explanation of her rights, which comported with § 1692g(a). On these facts, the Court found that "any confusion created by the ambiguity on the front of the letter dissipates when read in conjunction with the language on the back." *Id.* at 191. We agreed with the district court in *McStay* that "the least sophisticated consumer [was] not liable to conclude that the thirty-day period commenced on the date the . . . letter was written as opposed to received." *McStay v. I.C. Sys., Inc.*, 174 F. Supp. 2d 42, 46-47 (S.D.N.Y. 2001).

The same reasoning applies to this case. The validation notice adequately clears up any ambiguity created by the letter as to the starting date for the thirty-day period. Indeed, *McStay* was a closer case. There, the clarifying language was on the back of the notice; here, it is just two inches further down on the same page as the arguably ambiguous original statement. Accordingly, we find that even the least sophisticated consumer, reading the document in its entirety, would understand that the thirty-day dispute period started running from the day she received the letter, rather than from the date the letter was written. We therefore affirm the district court's decision to reject Jacobson's second argument.

C.  The Thirty Day Period: End Date

Jacobson's third contention is that the letter "falsely states that the only way for the consumer to avoid further collections is through full payment or a dispute being received within thirty days, when in fact all the consumer need [do] is *send* his dispute within the thirty days." Appellant's Br. at 10 (emphasis added).  HFS's letter explicitly requires either payment, or a notice of dispute, to be "*received in [HFS's] office*" within thirty days, if the recipient wants to avoid "further action" (emphasis added).  Though Jacobson's counsel made this argument to the district court, Judge Glasser did not address it.

The two courts we have found that have considered this issue have resolved it in favor of the consumer, holding that the debt collector must give the recipient notice that she has thirty days to *mail* the dispute notice.  The Seventh Circuit reached that conclusion in *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997), where the collection letter stated that payment had to be received within the thirty-day period, "thus requiring plaintiff to mail the payment prior to the thirtieth day to comply." *Id.* at 519.  On that basis, that Circuit found that the letter violated the FDCPA:

> It is clear that Mr. Chauncey had the full thirty days to send his notification to defendant.  Nothing in Section 1692g requires, and we have found no other court decision which has required, that the debt collector must *receive* notice of the dispute within thirty days as defendant insists. . . . If we were to hold that the validation request must be *received* by the thirtieth day, we would be rewriting Section 1692g, which we are not entitled to do.

*Id.* at 519.  More recently, Judge Weinstein, sitting in the same district in which this case was filed, followed *Chauncey*. *Swift v. Maximus, Inc.*, No. 04-cv-216 (JBW), 2004 WL 1576618, at *3-4 (E.D.N.Y. July 15, 2004) ("[T]he notice states that payment must be *received* within the thirty day limit.  Even the least-sophisticated consumer would calculate that payment must be

13

mailed in advance of a deadline in order to be received by that deadline."). In *Chauncey* and *Swift*, the debt collectors did not explicitly misstate the period for submitting a dispute notice. Their communications, however, overshadowed that period by demanding that *payment* be received within thirty days. The case before us is even clearer. Here, the letter states directly that any *notice of dispute* must be received within thirty days.

Both the *Chauncey* court and Judge Weinstein readily assumed that § 1692g gives the consumer thirty days to mail the dispute notice. That question, however, is an open one in our Court, and must be addressed expressly, for the answer is not obvious. Read in isolation, the text of the statute is inconclusive. Section 1692g(b), which provides the substantive right to seek verification of the debt, states simply that the debt collector must cease collection "[i]f the consumer *notifies* the debt collector in writing within the thirty-day period described in subsection (a) of this section" (emphasis added). Similarly, § 1692g(a)(4) requires "a statement that if the consumer *notifies* the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" (emphasis added). And one might read this language either way.

The consumer, having done all in her power to submit the notice, can be said to notify the debt collector "within the thirty day period" if she places the dispute notice in the mailbox before thirty days have passed. Alternatively, one could say that a consumer has not notified the debt collector until the written notice arrives at the debt collector's address. For similar reasons, § 1692g(a)(3) is ambiguous; it orders debt collectors to include "a statement that unless the consumer, within thirty days after receipt of the notice, *disputes* the validity of the debt . . . the debt will be assumed to be valid by the debt collector" (emphasis added). Looking solely to the text, we could say that a consumer "disputes" the validity of the debt the moment she mails a

14

notice. But we could also conclude, instead, that a consumer does not dispute a debt within thirty days unless the collector receives the notice before thirty days expire.

The Act's legislative history, moreover, sheds no direct light on the meaning of the text. *See* S. Rep. No. 95-382, at 4, 8 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699, 1702 ("If the consumer disputes the validity of the debt within 30 days, the debt collector must cease collection until he sends the consumer verification. . . . If a consumer disputes a debt within 30 days, the debt collector must stop collection until verification is sent to the consumer.").

Under the circumstances, we must examine the underlying purposes of the statute to discern its meaning. We must, in the classic words of the headnote to a celebrated nineteenth-century English torts case, look to the "mischief" the statute was designed to address. *Gorris v. Scott*, (1874) 9 L.R. Exch. 125, 125. Doing so leads us to conclude that the FDCPA gives the consumer thirty days to mail the notice. Though it also protects the interests of law-abiding debt collectors, the Act is primarily a consumer protection statute, and we have consistently interpreted the statute with that congressional object in mind. *See, e.g., Russell*, 74 F.3d at 33-34; *Clomon*, 988 F.2d at 1318-20.

The aim of § 1692g is to provide a period for the recipient of a collection letter to consider her options. It is also to make the rights and obligations of a potentially hapless debtor as pellucid as possible. Given these goals, we cannot adopt a construction of the Act that would not only shorten the debtor's period of reflection, but also leave that debtor uncertain as to just when – given the vagaries of the mails – she must, to be safe, send out a notice of dispute.

For these reasons, we find that the better reading of § 1692g supports Jacobson's third argument. Accordingly, we agree with the Seventh Circuit and with Judge Weinstein, and hold that the recipient of a debt collection letter covered by the FDCPA validly invokes the right to

have the debt verified whenever she *mails* a notice of dispute *within thirty days of receiving* a communication from the debt collector. It follows that the letter in the case before us violates the FDCPA, because it contradicts Jacobson's rights under § 1692g. By requiring the notice to be received by the debt collector within thirty days, the letter shortens the period during which the recipient may seek verification of the debt. We therefore reverse the district court's decision to grant summary judgment to HFS.[8]

**II. Attorneys' Fees and Costs**

The FDCPA provides for fee-shifting as a matter of course *to* successful plaintiffs, 15 U.S.C. § 1692k(a)(3), but also gives the district court the power to award fees *against* abusive plaintiffs: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." *Id*. Judge Glasser made such a finding in this case, and awarded attorneys' fees and costs to HFS. *Jacobson*, 434 F. Supp. 2d at 141.

This Court has not yet had an occasion to determine the standard of review for decisions to award attorneys' fees under the FDCPA. We generally review decisions to award or deny attorneys' fees for abuse of discretion. *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 188 (2d Cir.

---

[8] Jacobson has not cross-moved for summary judgment. Given our reading of the statute and of the letter Jacobson received, it would appear that summary judgment would be available to him, absent possible defenses that have not been, but would not in the ordinary course be, brought to our attention. In any event, we leave all that to the district court on remand. In this respect, we also note that Jacobson seeks statutory damages and attorneys' fees. The award of costs and fees to a successful plaintiff appears to be mandatory. 15 U.S.C. § 1692k(a)(3). But the award of statutory damages is in the discretion of the district court, *id.* § 1692k(a)(2)(A), which may, without doubt, consider whether the violation was manifest, or whether, as here, it could be established only after a not uncomplicated exercise in statutory construction. *See id.* § 1692k(b) ("[T]he court shall consider . . . the extent to which [the defendant's] noncompliance was intentional.").

16

2000). Moreover, other circuit courts hearing appeals from awards against plaintiffs under § 1692k(a)(3) have used that standard. *See, e.g., Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2003); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir. 1985). We adopt that approach, and hold that we review for abuse of discretion a district court's decision to award attorneys' fees to a defendant pursuant to the FDCPA. Doing so, we find that the district court's determination that Jacobson brought this action "in bad faith and for the purpose of harassment" cannot stand. *See Kerin*, 218 F.3d at 188 (a district court abuses its discretion if it relies on "an erroneous view of the law or on a clearly erroneous assessment of the evidence" (internal quotation marks and citation omitted)).

In justifying the award, Judge Glasser relied on Jacobson's acknowledgment that the underlying debt was valid, and his admission that he did not feel "harassed, threatened or misled by the letter." 434 F. Supp. 2d at 141. These facts are irrelevant to the question of whether Jacobson brought the action "in bad faith and for the purpose of harassment," and it was legally erroneous for the district court to base its conclusion on them. As explained above, by providing for statutory damages and attorneys fees for successful plaintiffs, the FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations. Jacobson's subjective reaction to the letter, therefore, is neither here nor there.

The district court also based its award on the conclusion that Jacobson "knew that his claim was meritless." *Id.* Since we have found that Jacobson's third argument was in fact meritorious, this basis for granting costs and fees was necessarily erroneous.

Accordingly, we vacate the award of costs and attorneys' fees to HFS.

17

## CONCLUSION

We **AFFIRM** the district court in part and **REVERSE** it in part, and **VACATE** its judgment, both on the merits of Jacobson's claim, and as to the award of attorneys' fees and costs to HFS. The case is **REMANDED** for further proceedings consistent with this opinion.