**In re Jerry HATHCOCK and Bonnie J. Hathcock, Debtors.**

**Stephen L. Meininger, Plaintiff,**

**v.**

**GC Services Limited Partnership and Capital One Bank (USA), National Association, Defendants.**

**Bankruptcy No. 8:08–bk–15541–CED.
Adversary No. 8:09–ap–00154–CED.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 1, 2010.

Thomas A. Lash, Attorney for Trustee, Lash & Wilcox, P.L., Tampa, FL, for Plaintiff.

James I. Sullivan, Hinshaw & Culbertson, LLP, Tampa, FL, Charles M. Tatelbaum, Shirin Movahed, Adorno & Yoss LLP, Fort Lauderdale, FL, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING MOTIONS TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE

CARYL E. DELANO, Bankruptcy Judge.

The issue raised in the defendants' motions to dismiss is whether, using the

hypothetical least-sophisticated consumer test adopted by the Eleventh Circuit, a collection letter mailed by a debt collector provided effective notice to the consumer of her rights under the Fair Debt Collection Practices Act ("FDCPA") or otherwise violated the FDCPA or the Florida Consumer Collection Practices Act ("FCCPA"). For the reasons set forth below, the Court concludes as a matter of law that the collection letter did not violate the FDCPA or the FCCPA. Accordingly, the motions to dismiss are granted, and the case is dismissed.

*Factual and Procedural Background*

The facts are not in dispute. Bonnie Hathcock (the "Debtor") and her husband filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The plaintiff, Stephen Meininger ("Trustee") is the duly appointed trustee in the Chapter 7 case. The Debtor is indebted to Capital One Bank (USA), National Association ("Capital One"). Prior to the bankruptcy filing, Capital One retained GC Services Limited Partnership ("GC Services") as its collection agent. GC Services mailed a collection letter entitled "Collection Letter Validation Notice" (the "Collection Letter") to the Debtor.

The Debtor's pre-petition claims for alleged violations of the FDCPA and the FCCPA are property of the bankruptcy estate and subject to administration by the Trustee. 11 U.S.C. § 541. The Trustee filed a complaint against GC Services and Capital One. Capital One moved to dismiss. The Court granted the motion to dismiss the complaint, with leave to amend.[1] The Trustee then filed an amended complaint, and thereafter, with consent of the Court, filed a second amended complaint (the "Complaint").

The Trustee did not demand a jury. Both Capital One and GC Services filed motions to dismiss the Complaint. The parties each filed a memorandum of law in support of their position, and oral argument was conducted on September 23, 2009.

The Collection Letter from which the Trustee's claims arise is attached as Exhibit A to the Complaint. Although the copy consists of two pages, the Collection Letter is clearly a one-page, two-sided document. The first side identifies Capital One as the creditor, and lists the account balance and the account number. The text of the letter is as follows:

> *The above account has not been paid and has now been placed with GC Services for collections. Please remit the full balance to Capital One Bank (USA), N.A. at the address provided on the remittance section above.*
>
> *A representative is available to answer any questions you may have at our toll free number (800) [xxx-xxxx].*
>
> *Sincerely,*
>
> *B. Nelson*
>
> *Collection Manager*

On the bottom of the first page the following statement appears in bold print:

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION**

The reverse side of the Collection Letter contains the heading "GC Services Limited Partnership" and the following language:

UNLESS YOU, WITHIN THIRTY (30) DAYS AFTER YOUR RECEIPT OF GC SERVICES' INITIAL WRITTEN NOTICE TO YOU CONCERNING THIS DEBT, DISPUTE THE VALIDITY OF THE DEBT, OR ANY PORTION THEREOF, THE DEBT WILL BE ASSUMED TO BE VALID BY GC

---

1. Capital One's initial motion to dismiss also sought dismissal for lack of subject matter jurisdiction. The Court denied the motion to dismiss on this ground, finding that the Court had "related to" jurisdiction under 28 U.S.C. § 157(c).

SERVICES. IF YOU NOTIFY GC SERVICES IN WRITING WITHIN THE ABOVE DESCRIBED THIRTY (30) DAY PERIOD THAT THE DEBT, OR ANY PORTION THEREOF, IS DISPUTED, GC SERVICES WILL OBTAIN VERIFICATION OF THE DEBT OR A COPY OF THE JUDGMENT AGAINST YOU AND A COPY OF SUCH VERIFICATION OR JUDGMENT WILL BE MAILED TO YOU BY GC SERVICES. UPON YOUR WRITTEN REQUEST WITHIN THE ABOVE DESCRIBED THIRTY (30) DAY PERIOD, GC SERVICES WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

In Count I of the Complaint, the Trustee alleges three FDCPA violations. First, that the Collection Letter did not include a Validation Notice in the form required by section 1692g; second, that through the Collection Letter, GC Services engaged in conduct "the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of a debt," in violation of section 1692d; and third, that GC Services violated sections 1692e(2)(a) and (10) because the Collection Letter states the name "Capital One" more often than it states the name "GC Services." In Counts II and II of the Complaint, the Trustee alleges that the facts giving rise to the FDCPA claims also state claims under the FCCPA.

*Summary of the Law*

A. The Fair Debt Collection Practices Act

In 1977, Congress enacted the FDCPA, 15 U.S.C. § 1692, *et seq.,* to combat debt collectors' abusive, deceptive, and unfair debt collection practices and to ensure that debt collectors who adhere to ethical, non-abusive debt collection practices are not placed in a competitive disadvantage. Section 1692a.[2] As noted during the congressional hearings preceding the passage of the Act, some of the more disturbing debt collection tactics included midnight phone calls, threats, and disclosure of the debtor's confidential information to family and friends. S.Rep. No. 95–382 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696.[3] Generally, the FDCPA applies only to debt collectors, who are defined as persons who use instrumentalities of interstate commerce or the mails to collect the debt of another. Section 1692a(6).

The FDCPA requires that debt collectors inform consumers of their rights to require verification of the debt through what is commonly referred to as a "Validation Notice." Section 1692g(a) requires a debt collector, within five days of its initial communication with a consumer, to send a written notice stating the amount of the debt and the name of the creditor to whom the debt is owed. Sections 1692g(a)(1) & (2). This notice must include "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." Section 1692g(a)(3). The notice must incorporate "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the

---

**2.** Unless otherwise stated, statutory references are to the FDCPA, 15 U.S.C. § 1692, *et seq.*

**3.** The FCCPA was enacted with similar goals. *See* Fla. Staff An., S.B. 94, Mar. 6, 2001.

debt." Section 1692g(a)(4). Finally, the notice must contain "a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." Section 1692g(a)(5).

## B. The "Least–Sophisticated Consumer" Standard

■ The Eleventh Circuit has adopted the "least-sophisticated consumer" standard in analyzing claims brought under the FDCPA. *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985). The Eleventh Circuit's position is consistent with the majority of the federal circuit courts.[4] The least-sophisticated consumer standard is consistent with FDCPA's goal of expanding the consumer protections originally provided by the Federal Trade Commission Act. *Id.* at 1172.

■ "The purpose of the least-sophisticated-consumer standard, here as in other areas of consumer law, is to ensure that the [FDCPA] protects the gullible as well as the shrewd." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008). The Court applies this objective standard mindful of the FDCPA's dual purpose: to protect consumers against deceptive debt collection practices and to protect debt collectors from unreasonable constructions of their communications. *Id.* " 'The least sophisticated consumer' can be presumed to possess rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993). "However the test has an objective component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness....' " *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir.2010) (citations omitted).

## *Discussion*

### A. Standard of Review

■ Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In ruling on a motion to dismiss, the Court must determine that the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

■ Although there is a split among the Circuit Courts of Appeals as to whether the effectiveness of a Validation Notice is an issue of law or fact, courts that apply the least-sophisticated consumer standard treat these issues as questions of law.[5]

---

4. The Second, Third, Fourth, Sixth and Ninth Circuits also apply the "least-sophisticated consumer" standard. *Russell v. Equifax, A.R.S.*, 74 F.3d 30 (2d Cir.1996); *Brown v. Card. Serv. Ctr.*, 464 F.3d 450 (3d Cir.2006); *U.S. v. Nat'l Fin. Servs.*, 98 F.3d 131 (4th Cir.1996); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324 (6th Cir.2006). The Seventh and Eighth Circuits apply the "unsophisticated consumer" standard. *Durkin v. Equifax Check Servs. Inc.*, 406 F.3d 410 (7th Cir.2005);

*Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316 (8th Cir.2004).

5. The majority of courts have held that determining the effectiveness of a validation notice is a question of law. *See Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 n. 2 (6th Cir.2007) (effectiveness of validation notice is a question of law); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n. 2 (3d Cir.2000); *Terran v. Kaplan*, 109 F.3d 1428, 1432–33 (9th Cir.1997); *Swanson v. Southern*

This Court concurs with the court's holding in *Martinez v. Law Offices of David J. Stern*, 266 B.R. 523, 533 (Bankr.S.D.Fla. 2001), that "since the standard applied is objective in nature, i.e., a hypothetical least sophisticated consumer, the determination is an issue of law." The Court is mindful of the Eleventh Circuit's ruling in *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir.2010). In *LeBlanc*, the court held that determining whether a collection letter "could reasonably be perceived as a 'threat to take legal action' under the 'least-sophisticated consumer standard' ... is best left to jury decision." *Id.* at 1195. However, in this case there has been no jury demand and this Court will serve as the finder of fact. Therefore, it is appropriate for this Court to make its determination in the context of a motion to dismiss.

B. The Collection Letter Does Not Violate the FDCPA

*Section 1692g*

 The Trustee alleges that the Validation Notice in the Collection Letter does not comply with the requirements of 1692g because the first sentence of the Collection Letter's Validation Notice states:

> [u]nless you within thirty (30) days after your receipt of GC Services' *initial written notice* to you concerning this debt, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by GC Services. (emphasis supplied.)

The Trustee alleges that use of the word "initial" in the phrase "initial written notice to you" is false and misleading. The Trustee alleges that although section 1692g requires that the debt collector send the Validation Notice within five days of its initial communication to a consumer, the thirty day period within which to dispute the debt runs from the date of receipt of the Validation Notice, regardless of whether the Validation Notice itself is the debt collector's "initial communication" with the consumer. In other words, the recipient of the Collection Letter might not know whether the Collection Letter (and incorporated Validation Notice) was, in fact, the "initial written notice" from which the thirty day period begins to run, or whether there might have been some other "initial written notice" that had previously triggered the thirty day period.

In *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir.1996), the Seventh Circuit Court of Appeals held that "essentially, the notice required by section 1692(g) must tell the target that she has 30 days to dispute the validity of the debt." The court in *Lerner v. Forster*, 240 F.Supp.2d 233, 237 (E.D.N.Y.2003) reached a similar conclusion, finding that a validation notice must only include the amount of debt, name of creditor, statement that debt's validity will be assumed unless disputed by consumer within thirty days, and offer to verify the debt and provide the name and address of original creditor to comply with the FDCPA.

 Cases in which courts have found a violation of section 1692g address collection letters that demanded payment within a time period that was less than the statutory thirty day period to dispute the debt, that emphasized the duty to make the payment, and that obscured the fact that the debtor had thirty days to dispute the debt. *Terran v. Kaplan*, 109 F.3d 1428,

---

*Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225–26 (9th Cir.1988); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir.1996); *but see Walker v. National Recovery, Inc.*, 200 F.3d

500, 503 (7th Cir.1999) (holding that "whether a given message is confusing [for the purposes of FDCPA] is ... a question of fact, not of law or logic.").

1433 (9th Cir.1997). As the court in *Terran* explained, section 1692g was designed to prevent debt collectors from demanding payment in a collection letter within a time period that was less than the thirty day requirement set forth in the statute because including two separate time periods in the same collection letter could ultimately confuse the debtor as to his or her statutory rights. *Id.* For example, the collection letter at issue in *United States v. Nat'l Fin. Serv., Inc.*, 98 F.3d 131, 139 (4th Cir.1996), required immediate payment or payment within ten days in a "bold and commanding type" on the front of the notice, with the validation notice informing the recipient of the thirty day period to dispute the debt being printed in smaller, less visible ink on the reverse side.

The Collection Letter in this case makes no demands whatsoever. It merely reports that the account has not been paid, and requests that payment be made, without setting any time limits that might conflict with the statutory thirty day period to dispute the debt. Utilizing the least-sophisticated consumer standard, this Court finds, as a matter of law, that a recipient of the Collection Letter would understand that the thirty day period to dispute the debt commenced upon receipt of the Collection Letter. The Court further finds that the use of the words "initial written notice" in the Validation Notice of the Collection Letter would not be confusing to the least-sophisticated consumer.

*Section 1692d*

Next, the Trustee alleges that by sending the Collection Letter, GC Services violated section 1692d. Section 1692d states:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection

of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

 The Trustee does not allege that the Collection Letter falls within the ambit of prohibited conduct described in subsections (1) through (4).[6] Certainly, a collection letter that included threats of violence or the use of obscene or profane language would implicate section 1692d. That is not the case here. Because the Court has found that the Collection Letter does not violate section 1692g, the Court also finds that, using the least-sophisticated consumer standard, the Collection Letter cannot, as a matter of law, be considered "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Thus, there has been no violation of section 1692d.

*Sections 1692e(2)(A) and (10)*

 Lastly, the Trustee alleges that GC Services violated sections 1692e(2)(A) and (10) because GC Services' name appears in three places on the Collection Letter whereas Capital One's name ap-

---

6. In fact, the Complaint does not recite the text of subsections (1) through (4).

**704**

pears five times. The Trustee alleges that this would somehow confuse the recipient who would not understand that the Collection Letter triggered the thirty day period to dispute the debt.

The relevant provisions of section 1692e state

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Again utilizing the least-sophisticated consumer standard, the Court find that the references to GC Services and Capital One in the Collection Letter are not confusing; the Collection Letter clearly states that the account has been placed with GC Services for collection. The Court also finds as a matter of law that the references to the names of GC Services and Capital One in the Collection Letter are not a false representation or a deceptive means.

C. The Collection Letter Does Not Violate the FCCPA

Unlike the FDCPA, the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. §§ 559.55, et seq., applies not only to debt collectors but to any persons collecting a consumer debt. Fla. Stat. § 559.72. Counts II and III of the Complaint seek damages from GC Services and Capital One, respectively, for violations of the FCCPA. The Trustee alleges that the alleged defects in the Collection Letter and Validation Notice under the FDCPA are also violations of sections 559.72(7) and (9) of the FCCPA.

Fla. Stat. § 559.72 states, in part:

In collecting consumer debts, no person shall:

. . .

(7) Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

. . .

(9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

The FCCPA provides that in construing its provisions, "due consideration and great weight shall be given to the interpretation of the Federal Trade Commission and the federal courts relating to the [FDCPA]." Bacelli v. MFP, Inc., 2010 WL 2985699 (M.D.Fla.2010), citing Fla. Stat. § 559.77(5). See In re Cooper, 253 B.R. 286, 290 (Bankr.N.D.Fla.2000) (stating that "the [FCCPA] is narrower in scope than the federal act [FDCPA].").

Because the Court has determined that the Collection Letter does not violate the FDCPA, the Court concludes that the Collection Letter is not "conduct which can reasonably be expected to abuse or harass the debtor" in violation of section 559.72(7). Nor is the Collection Letter an attempt to enforce a debt that is not legitimate or the assertion of some legal right

with the knowledge that the right does not exist in violation of section 559.72(9).

### Conclusion

For the foregoing reasons, Count I of the Second Amended Complaint fails to state a claim upon which relief may be granted and does not plausibly suggest an entitlement to relief. Because the FCCPA claims set forth in Counts II and III are dependent upon the claims made in Count I, they fail to state claims for relief as well. The Trustee has been afforded three opportunities to state claims for relief, therefore dismissal with prejudice is appropriate.

Accordingly, for the reasons set forth above, which shall supplement this Court's ruling stated on the record in open court at the hearing on the motions to dismiss on September 23, 2009, it is

**ORDERED** that the Motions to Dismiss (Doc. Nos. 26 and 36) are GRANTED, and the Second Amended Complaint (Doc. No. 34) is DISMISSED with prejudice.

**DONE** and **ORDERED.**