In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1821

MARK SUESZ, individually and on behalf of a class,

*Plaintiff-Appellant*,

*v.*

MED-1 SOLUTIONS, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:12-cv-1517-WTL-MJD — **William T. Lawrence**, *Judge*.

ARGUED OCTOBER 3, 2013 — DECIDED OCTOBER 31, 2013

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges*.

FLAUM, *Circuit Judge*. Defendant-appellee Med-1 Solutions bought the medical debt of Mark Suesz and filed a collection action in the Marion County Small Claims Court for Pike Township. Med-1 obtained a favorable judgment, but Suesz then filed suit in federal district court seeking damages under the Fair Debt Collection Practices Act. The FDCPA contains a venue provision requiring debt collectors to bring suit in the "judicial district" where the contract was signed

or where the consumer resides. Suesz asserts that Med-1 violated this provision because he lives in a neighboring county and the debt was incurred in a township other than Pike. The district court dismissed Suesz's claim after finding Marion County Small Claims Courts were not judicial districts for the purposes of the FDCPA. We agree, and affirm the dismissal of Suesz's complaint.

## I. Background

Med-1 is in the business of buying delinquent debts. It purchased Suesz's debt from Community Hospital North in Indianapolis. In March 2012 it filed a collection suit in the Pike Township small claims court, located in Marion County.[1] Med-1 prevailed in the small claims action, and received a judgment against Suesz for $1,280.

Suesz lives one county over from Marion. Though he incurred the debt in Marion County, he did so in Lawrence Township, where Community North Hospital sits, and not in Pike Township. Suesz says that it is Med-1's practice to file claims in Pike Township regardless of the origins of the dispute.[2]

---

[1] Marion County is coterminous with the City of Indianapolis and is governed by a City-County Council.

[2] Suesz posits that this practice is an attempt at forum shopping. He cites a study on the township courts commissioned by the Indiana Supreme Court which came to a similar conclusion. *See* John G. Baker & Betty Barteau, Marion County Small Claims Courts Task Force, Report on the Marion County Small Claims Courts (2012), *available at* www.in.gov/judiciary/3844.htm.

Suesz filed a putative class action[3] alleging that Med-1's suit in Pike Township violated the FDCPA's venue provision. The district court granted Med-1's motion to dismiss. It reasoned that the Pike Township small claims court did not constitute an FDCPA judicial district, but was instead an administrative subset of the Marion County Circuit Court. The court was guided by our decision in *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996). It noted that the township courts were not courts of record and did not use juries, that litigants could file suit in any of the township courts in the county, that the Marion County Circuit Court judge could transfer cases between township courts for administrative convenience, and that the circuit court judge aided the township courts, including by establishing uniform township court rules. Suesz now appeals the dismissal of his complaint.

## II. Discussion

We review the district court's dismissal of a complaint de novo. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

### A. The policy behind § 1692i of the FDCPA

Congress enacted the FDCPA to curb abusive practices by debt collectors, and § 1692i of the law punishes the "unfair practice" of filing against consumers in "distant or inconvenient forums that can make it difficult for debtors to appear."

---

[3] He moved for class certification, but the parties agreed to defer the issue. The district court's ruling was explicitly limited to Suesz individually.

*Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120 (2d Cir. 2011) (quoting S. Rep. No. 95382, at 5 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699). To that end, debt collectors are permitted to bring collection actions "only in the judicial district or similar legal entity in which such consumer signed the contract sued upon; or in which such consumer resides at the commencement" of the action. 15 U.S.C. § 1692i.

Congress did not specially define "judicial district" in the statute, but that does not make the phrase vague. We simply construe it according to its common meaning. *Newsom*, 76 F.3d at 817; *see also Whitfield v. United States*, 543 U.S. 209, 213 (2005) (noting the "settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms"). Thus, in *Newsom*, we first turned to the definition of "judicial district" found in Black's Law Dictionary at the time the FDCPA was enacted. *Id.* at 817.[4] As we shall fully detail below, that definition framed our § 1692i analysis, and required a detailed look at the details of the Cook County Circuit Court and Illinois's broader judicial system.

We took this approach because debt collectors almost always bring collection actions in state courts, and the specifics of state judicial structures differ. Section 1692i's check on forum shopping thus requires us to consider these structures as a whole. *See, e.g.*, *Newsom*, 76 F.3d at 817–18. The dissent would impose a one-factor test asking only which court with

---

[4] The new edition of Black's omits the definition for "judicial district" for reasons of which we are unaware. This is immaterial. The relevant question is how the term was defined at the FDCPA's enactment.

original jurisdiction over the collection action is closest to the debtor.[5] But if Congress had intended this, it could easily have enacted such a provision. We continue to believe the FDCPA requires a more searching analysis of the structure and function of the state's judicial organization. Although Congress sought to aid unsophisticated parties who are the target of unfair debt collection methods, it was aware that it was imposing the FDCPA on our patchwork federal framework. Section 1692i may have been the legislature's attempt to balance its desire to aid debtors against the realities of our varied state court systems.

At any rate, we see no reason to depart from our existing approach in § 1692i cases. That requires us to undertake a detailed examination of the structure of Indiana's judiciary before we can determine what units are FDCPA judicial districts.

---

[5] The dissent also attempts to discredit our systematic approach with an intended *reductio ad absurdum*. It posits that, in the unlikely event that a federal court had jurisdiction over a collection action, and in a state with only one federal district (Montana, in the dissent's example), a debt collector could opt for the most inconvenient forum for the debtor possible (the long road from Missoula to Billings). Slip op. at 19. This is an open question that would depend on the particulars of the District of Montana. But if, after conducting the analysis, it seemed that the District of Montana *did* function as a single judicial district, the dissent would be correct that a debt collector could file in either location. However, that result would be faithful to the text of the § 1692 that Congress did enact. This is not incongruous, considering Congress's challenge in enacting a venue provision that applies from Anchorage to Atlanta.

**B. The Indiana court system**

Indiana has constitutionally established its courts of general and original jurisdiction: the circuit courts. Ind. Const. art. 7. Layered on top is a patchwork of statutorily created courts. These include superior courts, city and town courts, and the Marion County Small Claims Courts (what we have referred to as the "township courts").

With the exception of one circuit, the circuit courts are divided along county lines. Ind. Code § 33-28-1-2(a)(1)–(2). Each county contains only one circuit court. For this reason the General Assembly created superior courts as trial-level courts to lessen the circuit court's caseload. Ind. Code § 33-29-1-1.5. The number and functioning of superior courts and their relationship with the circuit court varies from county to county. But cases can typically be transferred between the two courts as necessary and agreed upon by the various judges. Ind. Code § 33-29-1-9. Many counties, especially the smaller ones, feature a so-called "standard superior court" as provided for in Indiana Code § 33-29-1-1. Standard superior courts contain a special small claims docket for civil actions where the amount or value of the property sought is no more than $6,000. Ind. Code § 33-29-2-4. Both the superior courts and the circuit court may exercise appellate de novo review over the decisions of town or city courts within the circuit or, in the case of Marion County, the township courts. Ind. Code § 33-34-3-15.

Another species of tribunal in Indiana is the city and town courts. Cities and towns are authorized to establish these courts by ordinance. Ind. Code § 33-35-1-1. City courts are helmed by a judge who is tasked with adopting rules for the court's functioning, and enjoys all the powers incident to

a court of record (though they are not courts of record themselves). Ind. Code § 33-35-2-1. City courts enjoy jurisdiction over all city ordinance violations, all misdemeanors, and some small claims. Ind. Code § 33-35-2-4, 2-5. Once a case is filed in city court, the venue cannot be changed. Ind. Code § 33-35-5-2. Judges serve as triers of fact until a jury demand is made, in which time six jurors from the community decide the case. Ind. Code § 33-35-5-5.

Finally, there are the township courts in Marion County. These courts are unique in the state. They are established by statute but supported by the nine townships, which are responsible for providing facilities and paying the salaries of officials. Ind. Code § 33-34-6-1. All fees generated by these courts are returned to the township coffers. Like the small claims dockets of the superior courts, the township courts have original and concurrent jurisdiction over civil actions seeking up to $6,000, though they are limited in subject matter jurisdiction to contract and tort cases. Ind. Code § 33-34-3-2. The Marion County Superior Court does not have a devoted small claims docket (as many of its analogs do). Such a docket would largely mirror the jurisdiction of the township courts if it existed. *Cf.* John G. Baker & Betty Barteau, Marion County Small Claims Courts Task Force, Report on the Marion County Small Claims Courts 7 (2012), *available at* www.in.gov/judiciary/3844.htm (noting that "[i]n Indiana's other counties [that is, other than Marion], small claims are heard by … superior courts as part of a small claims/minor offenses docket … ."). The township courts have countywide jurisdiction, and litigants are free to file small claims cases in any of the townships in the county. There is therefore no bar to the courts' hearing the cases where they are brought—but if the defendant objects to venue, and the court finds that

"required venue" lies elsewhere, it must transfer the case to another township. Ind. Code § 33-34-3-1(a). For debts, like the one in this case, the preferred venue is the place where the contract was signed, followed in priority by the township where the transactions giving rise to the claim took place, or where the defendants reside or do business. Ind. Code § 33-34-3-1(b).

The township courts are also distinct in their functioning. They are not courts of record and claims may not be tried to a jury—if a defendant seeks a jury trial the case is transferred to the superior court. Ind. Code § 33-34-1-3, 3-11. Court rules are created by the circuit court judge and uniform across the nine courts. Ind. Code § 33-34-3-6. The circuit judge also has the discretion to transfer cases from one township to another. Ind. Code § 33-34-5-1. Finally, as mentioned above, the circuit and superior courts may both exercise de novo review over the decisions of the township courts.

**C. The township courts are not FDCPA judicial districts**

The district court focused on our decision in *Newsom*, 76 F.3d 813, our only previous foray into § 1692i. The case concerned a debt collection action filed in the first district of the municipal department in downtown Chicago against a resident of suburban Schaumburg. *Id.* at 815–16. The debtor filed suit in the Northern District of Illinois under the FDCPA, alleging that the debt collector should have instead filed the debt collection action in the third district of the municipal department, where she lived. *Id.* at 816. The district court dismissed the case and we affirmed. *Id.*

As noted above, we defined "judicial district" by using Black's Law Dictionary. *Id.* at 817. The term was there de-

fined: "One of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each of such districts, and the boundaries of the district marking the territorial limits of its authority … ." *Id.* (quoting Black's Law Dictionary 848 (6th ed. 1990)).

Using this definition for our analysis, we concluded that the municipal department districts were not FDCPA judicial districts. The key factor was the lack of territorially-based limits on the courts' authority. The municipal department had limited jurisdiction, and heard only smaller claims. For cases eligible to be heard in the forum, an order of the circuit court required actions to be filed in the district of the debtor's residence or where the transaction arose. *Newsom*, 76 F.3d at 818. Yet we did not consider this filing limitation to be a venue requirement because a separate order permitted cases to be heard anywhere in the county as necessary, and to be freely transferred for administrative convenience. *Id.* at 819. Additionally, filing a case in the wrong district in violation of the rules did not deprive the court of jurisdiction or lead to dismissal—it led only to a transfer to the correct location. *Id.* In sum, the "boundaries between the Municipal Department administrative subdistricts [did] not set any territorial limits to the subdistrict's authority within the Circuit[,]" and the districts were therefore units of administrative convenience for the Circuit Court of Cook County. *Id.*

The only other court of appeals to give § 1692i a thorough treatment is the Second Circuit in its 2011 case, *Hess v. Cohen & Slamowitz LLP*. 637 F.3d 117 (2d Cir. 2011). The court found the Syracuse City Court to be a judicial district for FDCPA purposes. The New York statute governing the city

courts limited their authority to city residents or residents of contiguous towns. *Id.* at 122. Defendants not subject to city court jurisdiction were free to move for dismissal. *Id.* The court found that where a court system "is governed by laws that limit the territorial extent of those courts based on … a defendant's contacts with the forum[,]" those "laws delimit the 'judicial district'" for purposes of the FDCPA. *Id.* at 123.

The Second Circuit discussed our opinion in *Newsom* and found our approaches consistent. *Id.* at 126–27. We agree. The authority of the city courts in New York was circumscribed by the statutorily required nexus between the defendant and the forum's territorial boundaries. *Id.* at 127. It was not so with the municipal district divisions we confronted in *Newsom*, where the venue rules did not subject misfiled suits to dismissal. The *Hess* city courts also functioned more as independent judicial districts on the ground: whereas Cook County municipal department suits could be freely transferred between different courtrooms for administrative convenience, this was not the case with New York's city courts and their county counterparts.

Like our decision in *Newsom*, the Second Circuit's analysis highlights the importance of looking to the details of the state court organizational apparatus in making the FDCPA judicial district determination. Our nod in *Newsom* to the old Black's Law Dictionary definition of judicial district gives us a starting point in our analysis, though it may not take us all the way home. The first half of the definition, "[o]ne of the circuits or precincts into which a state is commonly divided for judicial purposes; a court of general original jurisdiction being usually provided in each such districts" is unlikely to do much independent work, other than to definitively iden-

tify the state's primary judicial division—typically at the county level—as an FDCPA judicial district. This is not controversial, and litigants are unlikely to assert a right under the FDCPA to file debt collection actions in neighboring counties.

But a court need not have general jurisdiction to be considered an FDCPA judicial district. Though its decision does not bind us, the Second Circuit found that a court of limited jurisdiction could constitute a judicial district—and our analysis in *Newsom* did not foreclose the idea. Indeed, if we thought general jurisdiction an absolute prerequisite, we could have ended our analysis of the municipal department divisions upon noting their limited jurisdiction. General jurisdiction is sufficient to make a court an FDCPA judicial district, but it is not necessary.

We can glean additional guidance from the definition's tail end, which notes that the boundaries of a judicial district typically mark "the territorial limits of its authority." This is the most salient difference between the city courts in New York and the municipal department districts in Illinois. A key indicator of judicial districts is whether there is a statutorily required nexus between the defendant's contacts with the forum and the forum's boundaries.

This definitional approach is only part of the equation, however. In *Newsom*, we paid close attention to the practical functioning of the court in question, as did the Second Circuit in *Hess*. This approach makes sense, given the language of § 1692i. Recall that the statute restricts filings to judicial districts and "similar legal entities." While the parties do not urge any independent significance of this clause, we noted in *Newsom* that it refers to entities "similar in structure and

function to judicial districts." 76 F.3d at 820. Thus, a forum like the New York city courts in *Hess* that lacks one of the touchstones in the Black's definition could still be an FDCPA judicial district if it "function[s] as [a] judicial district[]." *Newsom*, 76 F.3d at 819.

So what are we to make of the Indiana township courts? As we suggested above, our first indicator—whether the court is one of general jurisdiction—does not take us far. The circuit courts, as the repositories of general jurisdiction, clearly qualify as FDCPA judicial districts. But this alone does not disqualify the township courts if they otherwise look like judicial districts. *Newsom* and *Hess* leave open the possibility that courts of limited jurisdiction can properly be FDCPA judicial districts.

Still, the township courts fall short of constituting free-standing judicial districts for several reasons. First, they fall short under our definition, because the limitations on their authority are not coterminous with township boundaries. We find it especially significant that the statute permits debt collectors to file actions anywhere in the county, rather than limiting the township courts' reach to township borders. This makes the township courts similar to the municipal department districts in *Newsom* where filing outside the district did not compromise jurisdiction. 76 F.3d at 819. The statute also distinguishes the township courts from the city courts in *Hess*, where jurisdiction was more tightly circumscribed. 637 F.3d at 122–23. This filing flexibility suggests that the proper judicial district is Marion County as a whole, rather than the individual townships.

This conclusion is buttressed when we look at the way the courts actually function: the township courts in practice

are a component part of the Marion County Circuit Court. Like the districts in *Newsom*, cases can be transferred between township courts at the discretion of the circuit judge. 76 F.3d at 819. The circuit judge also has other administrative authority over the township courts, including establishing uniform rules of procedure and assisting in the preparation of court records. External establishment of court rules is not unique, of course, but this practice contrasts with the Indiana city and town courts, which are tasked with developing their own sets of rules. It is also noteworthy that the Marion County Superior Court lacks a small claims docket—which every other superior court in Indiana has. This suggests that the township courts, superior court, and circuit court are meant to function as a symbiotic whole, with the township courts obviating the need for a superior court small claims docket.[6]

Suesz argues the township courts are better analogized to the city courts in *Hess*. There, citizens not subject to the jurisdiction of the court were deemed to have waived their jurisdictional objection if they did not raise it, but if they did raise it, they were entitled to mandatory dismissal. Suesz says that the venue provisions here—which require the township court to transfer the case automatically to a preferred venue upon proper motion—are similar. We are unconvinced for two reasons. First, on a formal level, jurisdiction and venue are different creatures: the former deprives the court of its authority to decide the case at all, while the

---

[6] Though the township courts are financially supported by the townships and not the county, this is not enough to overcome the other factors suggesting that they are not FDCPA judicial districts.

latter is concerned with the parties' convenience and evidence. Suesz's argument breaks down on the practical level as well. In *Hess*, the limitations on the place of filing were statutory—the filing of a city court action outside the geographical limits was improper, even if subject to waiver. In contrast, the filing of a debt collection action in any of Marion County's townships is not improper. In fact, it is perfectly permissible under the text of the statute.[7] Even if venue can later be changed upon motion, this does not make the township courts FDCPA judicial districts.

One final argument advanced by Suesz bears highlighting. At oral argument, counsel suggested a distinction between *Hess* and *Newsom* based on the source of the court's creation. The courts in *Hess* were created by statute, while the districts in *Newsom* were the product of an administrative order—which presumably means that the court would be free to alter or abolish them as it saw fit. The township courts, Suesz argues, are more like the city courts in *Hess* because they too are creatures of statute. We agree that looking to the source of court creation is appealing as a convenient way to identify FDCPA judicial districts. But here the argument proves too much. The Indiana General Assembly established not just township and city courts by statute, but also the superior courts. It would be an absurd result if the supe-

---

[7] It is consistent with our analysis that the territorial limits on Syracuse city court jurisdiction in *Hess* included both the town and towns contiguous. The statute still required a territorial nexus between the defendant and the forum. In other words, there was no reason that the FDCPA judicial district could not be the town and surrounding ones, not just the town itself.

rior court were considered a separate judicial district from the circuit court, as the superior courts are the handmaiden to the circuit court, together creating the trial court of general jurisdiction in the counties. We thus decline Suesz's invitation to look to the origins of the court as a dispositive factor in our FDCPA analysis.

### III. Conclusion

As we have seen, the township courts are not FDCPA judicial districts, either in form or in function. We therefore AFFIRM the district court's dismissal of Suesz's complaint.

POSNER, *Circuit Judge*, dissenting. The panel majority, in affirming the dismissal of this suit, understandably relies heavily on *Newsom v. Friedman*, 76 F.3d 813 (7th Cir. 1996). But *Newsom* is unsound and should be overruled. It interpreted the same provision of the Fair Debt Collection Practices Act that we're asked to interpret in this case, but, like this case, it did so without reference to the Act's purpose. It treated statutory interpretation as a purely semantic activity—as it can be when the statutory language is extremely clear; but when it is not, the purpose of the statute can't be ignored, as it was in *Newsom* and is again today. Echoing *Newsom*, the opinion in the present case says that it "simply construe[s the term 'judicial district'] according to its common meaning," consistent with the principle that "Congress intends to adopt the common law definition of statutory terms." But there is no "common meaning" of judicial district, let alone a "common law meaning." And why would Congress want to give a *statutory* term a *common law* meaning, anyway?

Purposive interpretation must not be confused with the interpretive approach championed by the Supreme Court in the 1960s, as in *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964)—finding implicit in statutes rights (for example, to seek damages for a violation of a statute that does not specify damages as a remedy) that would make the statute more likely to achieve its aim. That now-abandoned approach overlooked the fact that statutes are very often the product of compromise. It can't be assumed that in passing a statute that creates a remedy for a perceived wrong, Congress wants the courts to amend the statute (in the guise of interpretation) by adding remedies that will increase the statute's severity, thus overriding limitations on that severity that may have been

the price for getting the statute enacted. But what our court did in *Newsom* and does again today is not to strengthen a statute that Congress might not have wanted strengthened, but to weaken a statute that Congress had given no evidence of wanting weakened.

The Fair Debt Collection Practices Act is designed to prevent excesses by debt collectors. 15 U.S.C. §§ 1692(a), (e) ("it is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors"); *Muha v. Encore Receivable Management, Inc.*, 558 F.3d 623, 629 (7th Cir. 2009); *Jacobson v. Healthcare Financial Services, Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). By "debt collectors" is understood firms that try to collect consumer debts, which usually are too small to justify a lawsuit unless the debt is promptly defaulted, thereby enabling the debt collector to obtain—without incurring significant litigation cost—a judgment that it can use to collect the debt by garnishing the debtor's wages. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 940 (7th Cir. 2011) ("with the costs of litigation and the difficulties establishing the debt, when a debt collector cannot get payment through phone calls and letters and it has to go to court, the debt collector will often rely on default judgments as the last resort"); see *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775 (7th Cir. 2007); *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000); Bernice Yeung, "Some Lawyers Want to Keep Debt Collection Out of the Courts," *New York Times*, Apr. 23, 2010, p. A21A, www.nytimes.com/2010/04/23/us/23sfdebt.html (visited Oct. 30, 2013). Deprived of contested litigation as a feasible means of obtaining repayment of a small debt, debt collectors resort to substitutes, some unsavory, such as harassment, as noted in such cases as *FCC v. Pacifica Foundation*, 438 U.S. 726, 749 n. 27 (1978), and *Horkey*

*v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 771 (7th Cir. 2003); see also W. Page Keeton et al., *Prosser and Keeton on Torts* § 12, pp. 61–62 (5th ed. 1984).

One harassing tactic is to file a claim against a debtor in a court remote from his home or place of work, in the hope that he'll default rather than take the trouble to travel to the remote site of the court, see *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 124 (2d Cir. 2011); or to file in a court in which judges are unsympathetic to debtors. In short, debt collectors shop for the most advantageous forum, abetted by decisions such as the one in this case.

It is against this background, rather than in a vacuum, that we should be interpreting the provision of the Fair Debt Collection Practices Act at issue in this case. That provision states that unless the debt sued on is secured by real estate, a debt collector can bring a legal action to collect it "only in the judicial district or similar legal entity—(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a)(2). (If real estate is security for the loan, as it is not in this case, the action must be brought in the judicial district or similar legal entity in which the property is located, § 1692i(a)(1); that will usually be an advantageous venue from the debtor's standpoint.) The bigger the district and therefore the more courts it contains and the farther the debtor may have to travel to the court chosen by the debt collector to sue the debtor in, the greater the debt collector's opportunity to forum shop. The natural objective to impute to the quoted venue provisions, and thus to the key term "judicial district or similar legal entity," is to limit forum shopping by debt collectors. A purposive interpretation of

the phrase would ask what interpretation would protect consumer debtors without crimping the collection efforts of debt collectors beyond the point fixed or implied in the statute.

*Newsom* did not take the approach I've suggested; nor does the panel in this case. Both opinions take a purely semantic approach: the court asks what meaning can be assigned to "judicial district" and "similar legal entity" without reference to statutory purpose. One possible outcome of the semantic approach would be that "judicial district" means anything called a "judicial district," and "similar legal entity" anything that is identical to some (maybe any) judicial district but called by a different name. Suppose a state had a judicial structure identical to that of another state, but the other state was divided into "judicial districts" while the first state was divided the same way but its "districts" were called "judicial divisions." Those divisions would be similar legal entities within the meaning of the Fair Debt Collection Practices Act on the literalistic interpretation that I'm assuming, but divisions of federal districts would not be. The Northern District of Illinois is divided into two divisions, called the Western Division and the Eastern Division. Obviously they are not identical to the Northern District; they are components of it. So under the approach adopted in *Newsom* and the present case, if a debtor lived in and had signed a loan contract in Chicago (which is in the Eastern Division), a debt collector could (in the unlikely event of being able to find a federal jurisdictional basis for suing the debtor in federal court) nevertheless sue the debtor in Rockford. That city is in the Western Division—and is 89 miles by car from Chicago. In Montana, by the logic of *Newsom* and the majority opinion in the present case, a resident of Billings could be

made by a debt collector to drive 346 miles one way to the federal courthouse in Missoula to defend against the debt collector's suit, even though Billings has its own federal courthouse, because both courthouses would be in the same "judicial district," namely the District of Montana.

*Newsom* concerned debt collection in Illinois rather than, as in this case, Indiana. The Illinois Constitution divides the state into Judicial Circuits, which are analogous to federal districts. The Circuit Court of Cook County (the most populous Illinois county, as it is the county that contains Chicago) has created six Municipal Department Districts. *Newsom v. Friedman, supra*, 76 F.3d at 818. The First Municipal District is Chicago, and has courts at nine locations. www.cookcountycourt.org/aboutthecourt/ MunicipalDepartment/FirstMunicipalDistrictChicago.aspx (visited Oct. 30, 2013). Suits for debts that do not exceed a specified amount ($30,000 in Chicago, $100,000 in the suburbs, see Circuit Court of Cook County General Order Nos. 1.2, 2.3(b)(1), (2)) may be filed in a Municipal Department court in the district in which either the debtor resides or the transaction giving rise to the debt took place—venues similar to those specified in the Fair Debt Collection Practices Act. But the Cook County ordinance that creates these Municipal Department courts authorizes the Circuit Court to transfer suits filed in a Municipal Department court to any other court in the county, which needn't be a Municipal Department court. Cook County General Order No. 1.3(a). There is also authorization for transfer "to any other department, division or district" of the Cook County Circuit Court "for the convenience of parties and witnesses and for the more efficient disposition of litigation." *Id.*, 1.3(d). This provision seems to have been decisive in the ruling in *New-*

*som* that the Municipal Department Districts are not judicial districts or similar legal entities within the meaning of the Fair Debt Collection Practices Act. The "judicial district or similar legal entity" is, according to *Newsom*, Cook County.

I don't get it. The land area of Cook County is almost 1000 square miles. The county stretches 47 miles from its southern to its northern border. Debt collectors can easily find a court that is inconvenient to the debtor in which to sue him. For example, while suburban Evanston Hospital is fewer than 5 miles from the Second Municipal District Courthouse in Skokie, it is more than 40 miles from the Sixth Municipal District Courthouse in Markham. The debt collector in *Newsom* sued the debtor in downtown Chicago, more than 30 miles from Schaumburg, where the debtor lived—and where the debt collector could have sued her.

I can think of no reason related to the Fair Debt Collection Practices Act for disqualifying the Cook County Municipal Department Districts from being regarded as judicial districts or similar legal entities. No reason is given in the *Newsom* opinion or in the majority opinion in the present case. To deem them judicial districts or similar legal entities would prevent forum shopping by debt collectors that can undermine the effectiveness of the federal act. It is especially puzzling that the court in *Newsom*, committed as it was to a literalistic approach to statutory interpretation, refused to classify Cook County's Municipal Department *Districts* as judicial districts, while classifying Cook County *Circuit* as a judicial district. So literalism went out the window.

The court thought that only a judicial entity created by the Illinois Constitution could be a judicial district. (The Municipal Department Districts had been created by the Cir-

cuit Court of Cook County.) Where does that idea come from? There isn't even a semantic basis for limiting the definition of "judicial district" to a district created by state rather than county law; the words "state," "county," "city," or "township" do not appear in section 1692i.

That is the section we're interpreting, and *Newsom* should have related it to what the Circuit Court of Cook County had done. It had created Municipal Department Districts for the convenience of litigants, lawyers, and judges. It had divided the county into six districts and placed a courtroom near the center of each, all for convenience's sake. Section 1692i says in effect: "debt collector, you must sue in the court most convenient to the debtor." The court in *Newsom* failed to put two and two together.

Marion County, which is coterminous with the City of Indianapolis, is Indiana's most populous county, and is thus to Indiana as Cook County (dominated by Chicago) is to Illinois. Alone among Indiana counties it has "Township Small Claims Courts" (nine in number), which are similar to Cook County's Municipal Department District courts, although their jurisdiction is limited to claims that do not exceed $6,000. Ind. Code § 33-34-3-2. A report commissioned by the Indiana Supreme Court and authored by two Indiana appellate judges found that debt collectors seek out judges who favor debt collectors and are distant from the debtor's residence.

> Although the right to a change of venue appears on the Notice of Claim, many defendants are unaware that they have a right to ask the court to transfer the case to the townships where they live. Defendants without private transportation face few realistic options for

> travel to township courts outside their own townships. For example, it can take more than three hours, round-trip, to travel from Lawrence Township to the Decatur Township Small Claims Court via city bus. Litigants who choose to take a taxi instead will pay an extraordinary amount to travel from Lawrence Township to Decatur Township.

John G. Baker & Betty Barteau, *Report on the Marion County Small Claims Courts* 13–14 (May 1, 2012), www.in.gov/ judiciary/files/pubs-smclaims-rept-2012.pdf (visited Oct. 30, 2013).

The named plaintiff in this case lives in Hancock County, which adjoins Marion County on the east. There is, as noted in the report on the County's small claims courts, a Township Small Claims Court in Lawrence, which is on the east side of Marion County, close to the plaintiff's residence. The defendant debt collector could have sued him there because that was where the debt had been incurred. Instead it sued him in the Township Small Claims Court in Pike Township, at the western end of Marion County, 20 miles from Lawrence and a 54-mile round trip from the plaintiff's home. A debtor has a right to a change of venue to a more convenient small-claims court—but only if he files a motion within ten days of service. Ind. Code § 33-34-3-1(a). How many small debtors have heard of "venue" or would think to ask for a transfer of the suit against them to another court—much less within ten days? Debt collectors have a wide choice of courts in which to sue; in practice, even if not in principle, the debtors do not.

The debt collector's brief, dry as dust, makes no effort to relate the meaning of "judicial district or similar legal entity"

to the purpose of the Fair Debt Collection Practices Act. The plaintiff's briefs are pretty dry as well, but do at least explain how the forum shopping enabled by the approach taken in *Newsom* denies important protections to debtors—though of course the plaintiff tries to distinguish that decision from this case. He points us to *Hess v. Cohen & Slamowitz LLP*, *supra*, which held that the City Courts of New York State, which are similar to Cook County's Municipal Department District courts and Marion County's Township Small Claims Courts, *are* judicial districts under the Fair Debt Collection Practices Act. But the court in *Hess* distinguished *Newsom*, rather than rejecting it, on the ground that the Municipal Department District courts had been created by the Circuit Court of Cook County as a matter of administrative convenience and (as I noted earlier) the Circuit Court can reassign a case from one divisional court to another, while the circumstances in which reassignment of a case is possible from one City Court to another in New York are "very limited." 637 F.3d at 127. What any of this has to do with the concerns behind the venue provisions of the Fair Debt Collection Practices Act escapes me. What's true is that a debt collector is free to choose a court *system* (federal, county, city, or township, depending on jurisdictional requirements) in which to file. But once it makes its choice, section 1692i requires it to pick the most convenient court within the system's territorial limits. That would be Lawrence Township court in this case, Clay town court in *Hess* (as that court held), and the Third Municipal District in *Newsom*, contrary to our holding in that case.

The defendant debt collector in the present case specializes in collecting debts for medical treatment, and many of the debtors are elderly or in poor health (often of course

both), which makes them especially vulnerable to the defendant's disreputable tactics.